UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                              :

OCEANOGRAFÍA, S.A. DE C.V. and      :
AMADO YÁÑEZ OSUNA,

                              :   No. 17 Civ. 1434 (RJS)

             Plaintiffs,      :

                              :

             v.                 :

CITIGROUP, INC., et al.             :

             Defendants.     :

                              :

                              :

                              :
---------------------------------------------------------x


### DEFENDANT CITIGROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

      A.    The Plaintiffs ................................................................................................ 2

      B.    The Pemex/OSA Cash Advance Program .................................................... 3

      C.    The Cash Advance Forgeries and Citigroup's Response ............................ 4

      D.    The OSA Seizure and Bankruptcy ............................................................... 5

      E.    Criminal Prosecution of Yáñez ................................................................... 5

      F.    Procedural History ....................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED ON *FORUM NON
         CONVENIENS* GROUNDS ........................................................................ 7

      A.    Plaintiffs' Choice Of Forum Is Not Entitled to Deference ......................... 7

      B.    Mexico Is An Adequate Alternative Forum ................................................. 8

      C.    The Private Interests Weigh In Favor of Mexico ........................................ 9

      D.    The Public Interest Factors Weigh in Favor of Mexico ............................ 14

    II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ........................ 15

    A.    PLAINTIFFS' TORT CLAIMS FAIL UNDER NEW YORK AND
         MEXICAN LAW ....................................................................................... 15

      1.    Plaintiffs' Malicious Prosecution Claim Should Be Dismissed .............. 16

      2.    Plaintiffs' Tortious Interference Claim Should Be Dismissed ................. 18

      3.    Plaintiffs' Fraud Claim Should Be Dismissed ........................................ 21

    B.    PLAINTIFF OSA LACKS STANDING TO BRING SUIT ................................. 23

    C.    OSA FAILS TO STATE A BREACH OF CONTRACT CLAIM ....................... 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

Page

**Cases**

*380544 Can., Inc., v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y. 2008)......................................................................22

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
2006 WL 1206333 (S.D.N.Y. May 2, 2006) ...........................................................23

*In re Allstate Ins. Co. (Stolarz-N.J. Mfrs. Ins. Co.)*,
613 N.E.2d 936 (N.Y. 1993)...................................................................................15

*Amaker v. Coombe*,
1998 WL 637177 (S.D.N.Y. Sept. 16, 1998).........................................................17

*In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
311 F.3d 488 (2d Cir. 2002)....................................................................................9

*ARI & Co. v. Regent Int'l Corp.*,
273 F. Supp. 2d 518 (S.D.N.Y. 2003)....................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................15

*Becker v. Club Las Velas*,
1995 WL 267025 (S.D.N.Y. May 8, 1995) .........................................................9, 11

*Bilinski v. Keith Haring Found., Inc.*,
96 F. Supp. 3d 35 (S.D.N.Y. 2015), *aff'd in part,* 632 F. App'x 637 (2d Cir. 2015) ......................................................................................................................21

*Blanco v. Banco Indus. de Venez., S.A.*,
997 F.2d 974 (2d Cir. 1993)...................................................................................11

*Broughton v. State of N.Y.*,
335 N.E.2d 310 (N.Y. 1975)...................................................................................17

*Brown v. N.Y. City Hous. Auth.*,
2015 WL 4461558 (S.D.N.Y. July 20, 2015).........................................................17

*Brown v. Roland*,
627 N.Y.S.2d 791 (App. Div. 1995)...................................................................17, 18

*Calavo Growers of Cal. v. Generali Belg.*,
632 F.2d 963 (2d Cir. 1980)...................................................................................15

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
   547 F.3d 115 (2d Cir. 2008)..............................................................................20, 21

*In re Cavalry Constr., Inc.*,
   428 B.R. 25 (S.D.N.Y. 2010)..............................................................................24

*City of New York v. Smokes-Spirits.com, Inc.*,
   541 F.3d 425 (2d Cir. 2008)..............................................................................23

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
   2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015).....................................................7

*Connolly v. Kinay*,
   2012 WL 1027231 (S.D.N.Y. Mar. 27, 2012) .....................................................7

*Coufal Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) .............................................................................19

*Cross & Cross Props., Ltd. v. Everett Allied Co.*,
   886 F.2d 497 (2d Cir. 1989)..............................................................................25

*Daniels v. Alvarado*,
   2004 WL 502561 (E.D.N.Y. Mar. 12, 2004) .....................................................17

*de Melo v. Lederle Labs., Div. of Am. Cyanamid Corp.*,
   801 F.2d 1058 (8th Cir. 1986) ...........................................................................12

*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*,
   666 F. App'x 17 (2d Cir. 2016) .........................................................................18

*DiRienzo v. Philip Servs. Corp.*,
   294 F.3d 21 (2d Cir. 2002)................................................................................14

*Do Rosário Veiga v. World Meteorological Organisation*,
   486 F. Supp. 2d 297 (S.D.N.Y. 2007)................................................................13

*Elmaliach v. Bank of China Ltd.*,
   971 N.Y.S.2d 504 (App. Div. 2013) ..................................................................16

*First Equity Corp. of Fla. v. Standard & Poor's Corp.*,
   690 F. Supp. 256 (S.D.N.Y. 1988).....................................................................23

*Flynn v. Nat'l Asset Mgmt. Agency*,
   42 F. Supp. 3d 527 (S.D.N.Y. 2014)..................................................................14

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)...............................................................................9, 13, 14

*Guthrie v. U.S. Fed. Bureau of Prisons*,
　　2010 WL 339759 (S.D.N.Y. Jan. 26, 2010) ....................................................................17

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*,
　　241 F. Supp. 2d 246 (S.D.N.Y. 2002)............................................................................16

*Iragorri v. United Techs. Corp.*,
　　274 F.3d 65 (2d Cir. 2001)..............................................................................................7

*Iusacell, S.A. de C.V. v. IBM Corp.*,
　　2014 WL 6491757 (S.D.N.Y. Nov. 14, 2014) ................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
　　313 U.S. 487 (1941)........................................................................................................15

*Lama Holding Co. v. Smith Barney Inc.*,
　　668 N.E.2d 1370 (N.Y. 1996).........................................................................................21

*Langsam v. Vallarta Gardens*,
　　2009 WL 8631353 (S.D.N.Y. June 15, 2009) .................................................................9

*Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*,
　　2015 WL 7730980 (S.D.N.Y. Nov. 24, 2015)........................................................16, 18, 19

*Mercator Corp. v. Windhorst*,
　　159 F. Supp. 3d 463 (S.D.N.Y. 2016)............................................................................24

*Mills v. Polar Molecular Corp.*,
　　12 F.3d 1170 (2d Cir. 1993)...........................................................................................22

*Modell's N.Y. v. Noodle Kidoodle*,
　　662 N.Y.S.2d 24 (App. Div. 1997).............................................................................22, 23

*Moorhouse v. Standard, N.Y.*,
　　997 N.Y.S.2d 127 (App. Div. 2014) ...............................................................................18

*Morea v. Saywitz*,
　　2010 WL 475302 (E.D.N.Y. Feb. 8, 2010).....................................................................17

*Nardelli v. Stamberg*,
　　377 N.E.2d 975 (N.Y. 1978)...........................................................................................18

*Navarrete De Pedrero v. Schweizer Aircraft Corp.*,
　　635 F. Supp. 2d 251 (W.D.N.Y. 2009)..........................................................................9, 15

*Niv v. Hilton Hotels Corp.*,
　　710 F. Supp. 2d. 328 (S.D.N.Y. 2008)............................................................................7

*Online Payment Sols. Inc. v. Svenska Handelsbanken AB*,
 638 F. Supp. 2d 375 (S.D.N.Y. 2009)..................................................................15

*Palacios v. The Coca-Cola Co.*,
 757 F. Supp. 2d 347 (S.D.N.Y. 2010)........................................................... *passim*

*Pasternack v. Lab. Corp. of Am. Holdings*,
 59 N.E.3d 485 (N.Y. 2016)....................................................................................23

*Phoenix Capital Invs. LLC v. Ellington Mgmt. Grp., L.L.C.*,
 859 N.Y.S.2d 46 (App. Div. 2008).......................................................................20

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981).............................................................................7, 13, 15

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
 329 F.3d 64 (2d Cir. 2003).....................................................................................8

*Reers v. Deutsche Bahn AG*,
 320 F. Supp. 2d 140 (S.D.N.Y. 2004)..................................................................13

*RFP LLC v. SCVNGR, Inc.*,
 788 F. Supp. 2d 191 (S.D.N.Y. 2011).............................................................19, 20

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004).............................................................................15, 21

*Russell v. Smith*,
 68 F.3d 33 (2d Cir. 1995) .....................................................................................16

*S.M. v. Oxford Health Plans (N.Y.), Inc.*,
 94 F. Supp. 3d 481 (S.D.N.Y. 2015).....................................................................24

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
 547 F.3d 406 (2d Cir. 2008).....................................................................................2

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
 421 F. Supp. 2d 741 (S.D.N.Y. 2006).............................................................12, 13

*Teleservices Jam., Ltd. v. West Telemarketing Corp.*,
 395 F. Supp. 2d 24 (S.D.N.Y. 2005)...............................................................23, 24

*Thyroff v. Nationwide Mut. Ins. Co.*,
 460 F.3d 400 (2d Cir. 2006)...................................................................................25

*Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*,
 18 Misc.3d 1122(A) (Sup. Ct. N.Y. Cty. 2008), *aff'd*, 877 N.Y.S.2d 71 (App.
 Div. 2009) ..............................................................................................................18

*Valdan Sportswear v. Montgomery Ward & Co.*,
    591 F. Supp. 1188 (S.D.N.Y. 1984).......................................................................22

*Wechsler v. Four Seasons Hotels Ltd.*,
    2014 WL 2604109 (S.D.N.Y. June 10, 2014) ..............................................8, 9, 14

*White Plains Coat & Apron Co. v. Cintas Corp.*,
    460 F.3d 281 (2d Cir. 2006)...........................................................................16

*Wilhelmina Models, Inc. v. Fleisher*,
    797 N.Y.S.2d 83 (App. Div. 2005)....................................................................17

*Williams v. CVS Pharmacy, Inc.*,
    6 N.Y.S.3d 78 (App. Div. 2015).......................................................................18

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)..............................................................................7

Defendant[1] Citigroup, Inc. ("Citigroup") respectfully moves to dismiss the amended complaint, dated December 4, 2017 (ECF 34), for *forum non conveniens* or, in the alternative, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).[2]

## PRELIMINARY STATEMENT

There are two plaintiffs in this action – one a Mexican company, the other a Mexican national.  Plaintiffs claim injuries in Mexico resulting from Mexican government proceedings arising from business dealings in Mexico among Mexican companies.  Not surprisingly, given these facts, all *forum non conveniens* factors overwhelmingly favor dismissal.

Even if this were an appropriate forum for this action, which it is not, Plaintiffs' claims should be dismissed for failure to state a claim.  Plaintiffs assert common law contract and tort claims, all of which fail for multiple, independent reasons.

*First*, Plaintiffs' malicious prosecution claim fails because, among other reasons, Plaintiffs have not obtained favorable determinations of the proceedings upon which they base the claim.  Plaintiff Amado Yáñez Osuna ("Yáñez") remains subject to an ongoing criminal prosecution, and plaintiff Oceanografía, S.A. de C.V. ("OSA") remains in bankruptcy, controlled by a trustee and supervised by the Mexican courts.  *Second*, Plaintiffs' tortious interference claim fails because the claim is not recognized under Mexican law and, in any event, Plaintiffs have

---

[1] The amended complaint also names Citigroup Global Markets, Inc., Citibank, N.A., and Banco Nacional de México, S.A. ("Banamex"), but none of those defendants has been served. Citigroup notes that the *forum non conveniens* dismissal arguments set forth in this memorandum would apply equally (if not more so, given non-U.S. defendant Banamex) if the recently-added defendants are considered.  Similarly, the failure to state a claim dismissal arguments set forth herein would appear equally to require dismissal against the recently-added defendants.

[2] Citigroup submits this memorandum of law, as well as the accompanying Request for Judicial Notice ("RJN"), the Declarations of Adam S. Hakki, Dr. Oscar Cruz Barney, Alan Gerardo de la Torre Lobera, Mauricio Roberto Palazuelos Bard, and Jose Alajandro De Iturbide Gutierrez. Citations to the supporting declarations appear herein as "Hakki Decl.", "Cruz Decl.", Torre Decl.", "Bard Decl.", and "Gutierrez Decl."

not adequately alleged what business relationships were interfered with or facts sufficient to meet the high standard needed to allege that Citigroup acted with wrongful purpose or through wrongful means as required to state a claim.  *Third*, the purported fraud claim fails because, among other things, Plaintiffs have not even tried to plead several of the applicable elements.  *Fourth*, all of plaintiff OSA's claims should be dismissed because it has not adequately alleged that the Mexican authorities supervising it have authorized this suit.  *Fifth*, and finally, even if OSA did have standing to sue, its breach of contract claim is easily disposed of because Citigroup is not alleged to be a party to the allegedly breached contracts, and because any covenant implied in those contracts would not encompass the conduct complained of in this action.

## FACTUAL BACKGROUND[3]

### A.    The Plaintiffs

Plaintiff OSA is an oil-services company organized under Mexican law with headquarters in Mexico.  ¶ 60; ECF 29.  OSA's core business involved providing vessels and other services to Mexico's state-owned oil company, Petróleos Mexicanos, S.A. de C.V. ("Pemex").  ¶¶ 58, 77.  In 2014, OSA went into bankruptcy and was placed under the control of a Mexican government agency, the Servicio de Administración y Enajenación de Bienes ("SAE").  ¶¶ 316-20.  OSA remains in bankruptcy and is administered by a court-appointed trustee.  Torre Decl. ¶¶ 26-30.

Plaintiff Yáñez is a Mexican national residing in Mexico and allegedly was OSA's controlling shareholder from 2007 until 2014.  ¶¶ 62-63, 78.  Until recently, he was incarcerated

---

[3] Citations to the amended complaint appear as "¶ _", and Citigroup assumes the non-conclusory factual allegations true for the purpose of the motion to dismiss only.  In addition to the allegations in the amended complaint, the Court may consider on a motion to dismiss any document quoted or referenced therein and any judicially noticeable materials.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008).

in Mexico.  ¶¶ 54-55, 322.  After a change of law relating to bail eligibility, Yáñez was released

after posting a sizable bond and agreeing to monitoring conditions.  Bard Decl. ¶¶ 24-25.  Yáñez

continues to face criminal prosecution in Mexico.  *See* ¶ 372; Bard Decl.¶ 17.

### B.     The Pemex/OSA Cash Advance Program

The allegedly fraudulent scheme that gives rise to this action involved cash receivable

financing provided by Banamex[4] to OSA in connection with services provided by OSA to

Pemex.  *See generally* ¶¶ 126-222.  A cash advance facility was established in 2008 to advance

funds to Pemex's vendors, including OSA, for work performed.  ¶ 129.  Under the program, a

participating Pemex contractor with an approved Pemex invoice could assign its payment rights

to Banamex at a discount and receive a cash advance from Banamex.  ¶¶ 129-41, 164-66.

OSA and Banamex allegedly entered into a new agreement for the cash advance facility

in 2012.  ¶¶ 184-85.  Under the new program, OSA allegedly assigned all of its collection rights

under designated Pemex master agreements, as opposed to assigning specific invoices as

allegedly was done under the 2008 program.  ¶ 188.  Upon completion of projects authorized

under the master agreements, Pemex would make payments to a designated account at Banamex.

¶¶ 199, 201, 205.  OSA remained liable for repayment of the cash advances if Pemex did not

make a required payment into the designated account.  ¶ 190.  Plaintiffs allege these changes in

program mechanics somehow removed the ability and need for OSA to submit fraudulent

paperwork.  *See* ¶¶ 31-34, 193-97, 209-210.  However, like the prior facility, the program still

required OSA to provide work estimates, work authorizations, and/or other documentation to

Banamex before Banamex would advance funds to OSA.  ¶¶ 211-22; *see also* Hakki Decl.,

Ex. A (cash advance agreement between OSA and Banamex) at 7, 11-12.

---

[4] Banamex is an indirect wholly-owned subsidiary of Citigroup, a Delaware corporation
headquartered in New York.  ¶¶ 64, 70.

### C.       The Cash Advance Forgeries and Citigroup's Response

In February 2014, the Secretaría de la Función Pública ("SFP") – the Mexican agency responsible for overseeing public contracts – announced that OSA had failed to comply with Mexican regulatory requirements for the posting of performance bonds.  ¶¶ 226-28.  As a result, the SFP prohibited OSA from obtaining new Pemex contracts for approximately 21 months.  ¶ 229.  Pemex then decided to review documentation relating to OSA's cash advance agreement with Banamex.  ¶ 233.  Among the documents reviewed by Pemex were invoices appearing to bear the signature of Pemex officials.  ¶ 234.  After review, Pemex announced, on February 20, 2014, that 166 documents were forged or altered and were not found in its files.  ¶¶ 235-36.

Plaintiffs allege that, in response to Pemex's announcement regarding forgeries, Citigroup conducted an internal investigation of Banamex's involvement with OSA.  ¶ 242.  Eight days after being contacted by Pemex about the invoices, Citigroup issued a press release disclosing the misconduct affecting Banamex and announcing that it was "coordinating with law enforcement agencies in Mexico . . . . to recoup the misappropriated funds."  ¶¶ 256-60.  The press release did not say OSA or Yáñez were responsible.  Rather, the announcement said that Citigroup was "seeking accountability for anyone involved."  RJN, Ex. 1, at 1.  The press release also estimated that Banamex would suffer a loss of approximately $400 million.  *Id.*

Citigroup subsequently disclosed these issues in other SEC filings, memoranda to employees, and during investor calls and conferences.  ¶¶ 261-293.  Similar to the initial press release, none of these statements identified OSA or Yáñez as perpetrators.  Indeed, the statements explained that Banamex had terminated and disciplined several of its employees in Mexico "whose actions or inactions failed to protect our company from this fraud."  ¶¶ 283-84.

**D.      The OSA Seizure and Bankruptcy**

On March 1, 2014, in connection with a criminal investigation of these matters, the

Mexican Attorney General's office seized OSA and directed the SAE to manage the company

and administer its assets.  ¶ 316.  Shortly thereafter, the SAE commenced bankruptcy

proceedings for OSA.  ¶ 320.  Since then, OSA has been under the control of a trustee, first

appointed by the SAE and then, after the order seizing OSA's assets was lifted, appointed by the

court presiding over OSA's bankruptcy.  ¶¶ 44-45.  In the nearly four years since bankruptcy

proceedings began, OSA and its creditors have tried multiple times to get an agreement approved

by the Mexican courts that would allow OSA to emerge from bankruptcy and allow Yáñez to

regain control of the company, Torre Decl. ¶¶ 15-19, 31-34, but OSA remains subject to the

control of a court-appointed trustee and the supervision of the Mexican bankruptcy court.  ¶ 61;

Torre Decl. ¶¶ 26-30.

**E.      Criminal Prosecution of Yáñez**

On May 12, 2014, Mexican authorities issued an arrest warrant for Yáñez, ¶ 321,

charging him with misusing loan proceeds.  *See* Bard Decl. ¶ 12.  Specifically, Yáñez was

alleged to have diverted funds obtained from Banamex to purchase a soccer team.  *See id*.  A

second arrest warrant was issued for Yáñez on October 28, 2014, ¶ 321; Bard Decl. ¶¶ 15-16,

this time relating to the alleged 5.6 billion Pesos fraudulently obtained from Banamex based on

forged Pemex documents.  Yáñez was subsequently arrested, criminally charged, and

incarcerated in Mexico City to await trial.  ¶ 322; Bard Decl. ¶ 17.

On June 18, 2016, Mexican criminal law was changed to permit individuals charged with

felony crimes to be released on bail, allowing Yáñez to successfully petition for a bail hearing.

Bard Decl. ¶ 24.  Yáñez is currently released on bail and under the supervision of the Mexican

court system during the course of his criminal cases, which remain pending.  *Id*. ¶ 25.  Yáñez has

never been exonerated.  *Id*. ¶ 17.  In early 2017, in connection with a collateral attack Yáñez filed

(called an *amparo* proceeding in Mexican law), a Mexican court found that the trial judge had

not sufficiently articulated the evidence against Yáñez when ruling that prosecutors could

proceed with the criminal case.  Bard Decl. ¶¶ 19-20; ¶ 372.  In response to that decision, a

revised order detailing the evidence against Yáñez was issued.  Bard Decl. ¶ 21.  Yáñez filed

another *amparo* challenge with respect to that revised order, which was recently denied.  *Id*. ¶ 22.

     **F.**    **Procedural History**

Plaintiffs filed their original complaint, naming only Citigroup as a defendant, on

February 27, 2017.  ECF 1.  They waited nearly four months – and only after the Court

threatened to dismiss the case if service was not made – to serve Citigroup.  Citigroup then

submitted a pre-motion letter outlining its motion to dismiss arguments.  After a pre-motion to

dismiss conference with the Court on August 24, 2017, Plaintiffs opted to amend their complaint

in response to Citigroup's pre-motion letter within two weeks.  Min. Entry, August 24, 2017.

This deadline was extended three times at Plaintiffs' request, and the amended complaint was

filed on November 30, 2017 (ECF 33) and corrected on December 4, 2017.  ECF 34.

In addition to Citigroup, the amended complaint names Citigroup Global Markets, Inc.,

Citibank, N.A., and Banamex, but Plaintiffs have not served them.  The gravamen of the claims

is that defendants falsely accused Plaintiffs of carrying out a fraud in the cash advance program.

On this basis, the amended complaint asserts claims for malicious prosecution, tortious

interference and fraud, as well as a claim by OSA for breach of the obligations of good faith and

fair dealing implied in (i) a 2008 OSA bond indenture, (ii) a 2012 agreement with CGMI for

advisory work related to OSA's acquisition of Cal Dive International Inc., and (iii) a 2012

agreement and commitment letter related to OSA's acquisition of an oil-services vessel.

## ARGUMENT

I.  **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS**

A court has discretion to dismiss a case on grounds of *forum non conveniens* if "a more appropriate forum exists." *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000). Three factors are considered: (1) the extent to which the plaintiffs' choice of U.S. forum is entitled to deference; (2) the adequacy and availability of a foreign forum; and (3) the balancing of various public and private interests. *Connolly v. Kinay*, 2012 WL 1027231, at *4 (S.D.N.Y. Mar. 27, 2012) (Sullivan, J.). In addressing *forum non conveniens*, the Court may consider matters outside the pleadings. *See City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *3 (S.D.N.Y. Apr. 30, 2015).

### A.  Plaintiffs' Choice Of Forum Is Not Entitled to Deference

The degree of deference given to a plaintiff's forum choice "moves on a sliding scale depending on several relevant considerations," including the "plaintiff's or the lawsuit's bona fide connection to the United States," and whether "considerations of convenience favor the conduct of the lawsuit in the United States." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc). Here, the sliding scale weighs heavily against any deference.

As a preliminary matter, any deference owed to Plaintiffs' choice of forum is already weak because all Plaintiffs are foreign. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Connolly*, 2012 WL 1027231, at *5 (more deference given to plaintiff that sues in "home forum" than to foreign plaintiff); *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 354 (S.D.N.Y. 2010) (Sullivan, J.) ("foreign residence diminishes forum deference"). Weighing further against deference is the fact that "none of the significant events occurred in this jurisdiction." *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 332 (S.D.N.Y. 2008). Instead,

all of the conduct central to Plaintiffs' claims undisputedly took place in Mexico.  Mexico is

where the cash advance agreements were negotiated, executed, and implemented.  ¶¶ 183-

85.  Mexico is where the alleged falsification of Pemex work estimates and authorizations took

place, where Banamex representatives allegedly "routinely visited both Pemex's and [OSA's]

offices to verify" ongoing projects, ¶ 219, and where Banamex's alleged complicity in the

scheme and alleged subsequent cover up occurred.  ¶¶ 242, 253, 347-48.  Mexico is where

various civil and criminal authorities received information and made decisions on actions taken

with respect to OSA and Yáñez.  And, Plaintiffs' alleged injuries would have been sustained in

Mexico, where OSA's assets were seized and remain under bankruptcy supervision, and where

Yáñez is being prosecuted.  ¶¶ 315-22.

Plaintiffs' invocation of venue provisions contained in contracts from 2008 and 2012 has

no bearing on the analysis because this dispute has no meaningful connection to those

agreements, which do not concern the cash advance programs.  *See* ¶¶ 82-125.  Indeed, the 2012

contract that *did* govern the cash advance program (conspicuously omitted from plaintiff OSA's

breach of contract claim) has a *Mexico* venue provision.  Hakki Decl., Ex. A at 21.

### B.     Mexico Is An Adequate Alternative Forum

An "alternative forum is adequate if the defendants are amenable to service of process

there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. v.*

*Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  Citigroup agrees, solely for purposes of

this suit, to submit to the jurisdiction of a Mexican court.  Citigroup further agrees, again solely

for purposes of this dispute, to waive statute of limitation defenses to the extent attributable to

the delay between the filing of this case and a reasonable time for refiling in Mexico and service

of process, and agrees to be bound by a final judgment entered by a Mexican court.  This

"consent satisfies the first prong of the adequacy test."  *Wechsler v. Four Seasons Hotels Ltd.*,

2014 WL 2604109, at *2 (S.D.N.Y. June 10, 2014) (Sullivan, J.).

As for the second adequacy prong, "the relevant inquiry concerns the capability of the foreign court to litigate the 'essential subject matter' of the dispute." *Palacios*, 757 F. Supp. 2d at 357. Mexico's legal system is comparable to ours, with procedures for business and commercial matters governed by Mexican federal law and regulated by the Mexican Commerce Code and Federal Code of Civil Procedure. Cruz Decl. ¶¶ 7-13. Mexican law permits Plaintiffs to bring suit in Mexico, put on witnesses and evidence, and, if successful, obtain a remedy. *Id*. Mexico has multiple mechanisms to ensure fair proceedings. *Id*. Thus, courts in this Circuit repeatedly conclude Mexico is an adequate forum. *See Langsam v. Vallarta Gardens*, 2009 WL 8631353, at *7 (S.D.N.Y. June 15, 2009); *Becker v. Club Las Velas*, 1995 WL 267025, at *2 (S.D.N.Y. May 8, 1995); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 261 (W.D.N.Y. 2009).

### C. The Private Interests Weigh In Favor of Mexico

The Supreme Court has identified a number of pertinent private interest factors: (1) ease of access to evidence; (2) availability of compulsory process; (3) cost for cooperative witnesses to attend trial; (4) enforceability of a judgment; and (5) all other practical matters that make trial "easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

***Ease of access to evidence.*** The "court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for trial of these issues." *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002). Here, Plaintiffs' self-serving allegation that their claims "relate *entirely* to the Citi managed cover-up, [and] not the underlying fraud committed by Banamex in Mexico," ¶ 3 (emphasis in original), is belied by Plaintiffs' serial requests to adjourn the deadline for filing the

amended complaint and the amended complaint itself.  In seeking a second adjournment, Plaintiffs' counsel described the importance of "access[ing] OSA's documents in Mexico," and noted Plaintiffs needed authorization from Mexican authorities to access them.  ECF 23.  In seeking a fourth adjournment, Plaintiffs explained that OSA's "historical records" remain in OSA's "original headquarters" in Mexico and acknowledged that they could not access the documents feely because municipal authorities would not allow it.  ECF 29 at 2.

At the same time, the amended complaint states that the "core dispute in this case" is "whether Citi properly blamed [OSA] for Banamex's improper accounting" for cash advances to OSA.  ¶ 248.  Banamex's accounting treatment of the cash advances is, of course, far less of a "core" matter than whether OSA and Yáñez were involved in falsifying documents submitted to Banamex.  In any event, resolving whether Plaintiffs were properly blamed – in essence, what precipitated discretionary actions by Mexican authorities in seizing OSA and prosecuting Yáñez – necessarily involves delving into what happened with a cash advance program administered in Mexico by Banamex, a Mexican company, for the benefit of OSA, another Mexican company, in connection with work for Pemex, the national oil company of Mexico.  It also necessarily would require this Court to scrutinize any evidence furnished to the Mexican authorities and courts and what led them to take the actions alleged.   A Mexican court, self-evidently, is best positioned to undertake that complex and sensitive inquiry into Mexican state action.

In addition, most, if not all, of the relevant evidence is located in Mexico.  Plaintiffs concede that key individuals critical to Citigroup's defense include current and former Banamex employees located in Mexico. *E.g.* ¶ 334 (describing Chairman of Banamex Board of Directors and member of Banamex executive committee); ¶ 336 (describing "12 employees discharged by Citi due to the Banamex fraud"); ¶¶ 347-49 (describing "Banamex officer" who allegedly

attempted to steal forged documents); *see also* Gutierrez Decl. ¶¶ 3-4.  Similarly, a number of

essential elements to Plaintiffs' claims hinge on events in Mexico, including, for example,

whether Yáñez has been "exonerated" and whether OSA remains subject to the control of a

trustee and subject to the supervision of the Mexican bankruptcy court.  In addition, all of

Plaintiffs' purported injuries, including their alleged lost business opportunities, are inextricably

tied to Mexico.

The concentration of evidence in Mexico and the potential need to work with various

municipal and court-appointed authorities to access that evidence weighs heavily in favor of

dismissal.  *See Palacios*, 757 F. Supp. 2d at 361 (finding that the "concentration of evidence in

Guatemala weighs heavily in favor of dismissal"); *Becker*, 1995 WL 267025, at *3 (private

factors weighed in favor of Mexico where "the majority of the Mexican witnesses" and "the

official records concerning the incident . . . are all located in Mexico").

Moreover, most of the documents will be in Spanish language, and many of the witnesses

will not speak English as a first language.  *See* Bard Decl. ¶ 4; Torre Decl. ¶ 10.  This will

require translation, further weighing in favor of Mexico.  S*ee Blanco v. Banco Indus. de Venez.,*

*S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) ("[T]he documentary evidence is in the Spanish language,

as would be trial or deposition testimony, requiring translation to English that would result in

significant cost to the parties and delay to the court.  This factor militates strongly in favor of

Venezuela as a more appropriate forum for this litigation."); *Becker*, 1995 WL 267025, at *3

("the majority of the Mexican witnesses . . . are non-English speaking and therefore their

testimony would be easier to procure in Mexico.").

Compounding these issues, Mexican bank secrecy laws prevent Banamex from sharing

information about its customers (including OSA and Pemex) absent permission from the

Mexican banking regulator or the customer.  Cruz Decl. ¶¶ 32-38.  Indeed, Plaintiffs' counsel has acknowledged its access to its own banking records has been impeded by multiple Mexican regulators.  ECF 29 at 2.  This would present expensive and time-consuming obstacles.  Having to secure permission in order to produce documents and information – aside from the inherent delay and burden associated with securing permission from third parties – will require the engagement of Mexican counsel to make an official request to the Mexican banking commission. Cruz Decl. ¶ 37.  Such requests are frequently denied, and, in that case, the parties would need to seek relief from a Mexican court.  *See id.*  While disputes over records in a Mexican litigation could be resolved by the same judge who would preside over Plaintiffs' claims, the parties would need to initiate a parallel proceeding in Mexico to secure release of the records if this action proceeds in New York.  *See id.* ¶ 38.

> ***Availability of compulsory processes.***  "The fact that defendant's nonparty witnesses are not subject to the Court's compulsory process weighs heavily in favor of dismissal" because "[t]he Second Circuit has held that a witness's live in-court testimony is the preferred method of presenting his or her testimony."  *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 768-69 (S.D.N.Y. 2006) (citation omitted).

As noted, resolving Plaintiffs' allegations will require documents and testimony from witnesses in Mexico, including employee witnesses and corporate representatives of Pemex (in Mexico) and numerous Mexico-based former Banamex and OSA employees.  *See* Gutierrez Decl. ¶¶ 3-4.  Accordingly, if the litigation proceeds in New York, Citigroup will be forced to defend itself without the ability to present live testimony from key former Banamex employees and third-party witnesses who are not subject to compulsory process in the United States.  *See de Melo v. Lederle Labs., Div. of Am. Cyanamid Corp.*, 801 F.2d 1058, 1062-63 (8th Cir. 1986)

(affirming *forum non* dismissal because, even though evidence for plaintiffs' preferred theory was in U.S., proceeding in U.S. would "box out [defendant] from access to concededly important evidence upon which its defense may well rest"); *see also Piper Aircraft*, 454 U.S. at 258-59 (affirming dismissal because defense would rely on "witnesses . . . located beyond the reach of compulsory process" even though liability could be proven with evidence in the U.S.).

Indeed, the only way to compel this evidence in the U.S. would be through the Hague Convention in the form of deposition or affidavit testimony, leaving Citigroup in the unacceptable position of having to go to trial without live testimony from the vast majority of significant witnesses.  *See, e.g.*, Cruz Decl. ¶¶ 24-31; *Gulf Oil*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.").  Utilizing the Hague Convention to obtain evidence would burden the parties with an expensive and lengthy administrative process that would require the issuance of Letters Rogatory to the Mexican Court through the Mexican Department of State (in Spanish) by local counsel in Mexico.  Cruz Decl. ¶¶ 24-31.  In fact, courts have routinely noted these administrative obstacles when dismissing actions on grounds of *forum non conveniens*.  *See Do Rosário Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007) ("[P]roceedings under the Hague Convention . . . entails significant amounts of time" and likely "would cause not only greater financial hardships, but significant delays in preparing the case for trial."); *Strategic Value Master Fund*, 421 F. Supp. 2d at 769 (dismissing for *forum non conveniens* in part because discovery under Hague Convention is "time-consuming" and conflicts with preference for live testimony); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 162 (S.D.N.Y. 2004) (noting that "[t]he massive inefficiency and inconvenience that [obtaining evidence through the Hague

Convention] would create for defendants and plaintiffs is all the more striking given the existence of an alternative forum where many of these problems would not arise.").

     ***Cost for cooperative witnesses to attend trial***.  As many or most of the relevant witnesses will be located in Mexico, *see, e.g.*, ¶¶ 344-45, 347-49, this factor weighs in favor of that forum. *Palacios*, 757 F. Supp. 2d at 361.

     **D.**     **The Public Interest Factors Weigh in Favor of Mexico**

     The Court also considers the following public interest factors: (1) the administrative difficulties associated with court congestion; (2) the imposition of jury duty on a community with no relationship to the litigation; (3) the local interest in resolving local disputes; and (4) the problems implicated in the application of foreign law.  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002).

     First, absent any comparative analysis, there is no basis to conclude that Mexican courts are "any more congested than the busy courts in this District."  *Palacios*, 757 F. Supp. 2d at 362. Second, as "this controversy has virtually nothing to do with New York," "[t]here is little reason to accept the possibility of imposing on New York jurors to decide this case. . . ."  *Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 539 (S.D.N.Y. 2014).

     Third, "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509.  This controversy is at home in Mexico.  Plaintiffs' lawsuit invites second-guessing of discretionary decisions by criminal and regulatory authorities in Mexico, which is a controversy fundamentally at home in Mexico.  Moreover, all of the injuries alleged by Plaintiffs arise from the actions of Mexican officials or lost business opportunities in Mexico, and the suit implicates the business interests of Mexico's state-owned oil company and is of a national importance to Mexico.  *See Wechsler*, 2014 WL 2604109, at *4 (finding that the action concerned property and persons in a foreign country and that country therefore had a greater

interest in deciding the dispute); *Online Payment Sols. Inc. v. Svenska Handelsbanken AB*, 638 F.

Supp. 2d 375, 392 (S.D.N.Y. 2009) (related "criminal charges are highly relevant to the

determination that Sweden has a greater public interest in this lawsuit than the United States").

　　　Fourth, the probability that foreign law will apply is an additional, persuasive factor

weighing in favor of dismissal.  *See*, *infra*, Section II.A.  While this Court can apply Mexican

law, "[i]n light of the inherent risks of misinterpretation of a foreign body of law to the various

substantive issues in this case, it will be more efficient that the matter be tried by a Mexican

court given its greater expected ability to understand and apply correctly the applicable Mexican

law." *Navarrete*, 635 F. Supp. 2d at 263; *see also Piper Aircraft*, 454 U.S. at 260; *Calavo

Growers of Cal. v. Generali Belg.*, 632 F.2d 963, 967 (2d Cir. 1980).

　　　Because Mexico is an adequate and available forum and all of the relevant factors weigh

in favor of Mexico, the Court should dismiss this action on *forum non conveniens* grounds.

## II.　　THE AMENDED COMPLAINT FAILS TO STATE A CLAIM

　　　Even if this action were not subject to dismissal on *forum non conveniens* grounds, it

should be dismissed for failure to state a claim.  A complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Conclusory or speculative allegations are not credited.  *Id.* at 681.  Moreover, to the extent

Plaintiffs' claims sound in fraud, they are subject to the particularity requirements of Federal

Rule of Civil Procedure 9(b).  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

### A.　　PLAINTIFFS' TORT CLAIMS FAIL UNDER NEW YORK AND MEXICAN LAW

　　　In evaluating Plaintiffs' tort claims, it is necessary to determine whether New York or

Mexican law applies.  This Court applies New York choice of law rules to common law claims.

15

*See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The first step in the analysis is to determine whether there is an actual conflict between the laws that could apply.  *In re Allstate Ins. Co. (Stolarz-N.J. Mfrs. Ins. Co.)*, 613 N.E.2d 936, 937 (N.Y. 1993).  To find an actual conflict, the potentially applicable law "must provide different substantive rules . . . that are 'relevant' to the issue at hand and have a 'significant possible effect on the outcome . . . .'" *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 512 (App. Div. 2013) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005)).

As discussed below, there is at least one actual conflict between New York and Mexican law.  In that instance, New York applies an "interests" analysis to determine which law governs. *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (citation and internal quotation marks omitted).  Generally, the place where a plaintiff suffers damage is considered to be the "place of the wrong" and determines which substantive law should apply. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002). Here, Plaintiffs are Mexican residents with business operations in Mexico.  The harms they allegedly suffered relate to their businesses in Mexico and the initiation of criminal and bankruptcy proceedings in Mexico.  "The locus of the tort[s] is thus Mexico, where Plaintiffs suffered the damages that would make [Citigroup] liable." *Maricultura Del Norte, S. de R.L. de C.V. v. Worldbusiness Capital, Inc.*, 2015 WL 7730980, at *11 (S.D.N.Y. Nov. 24, 2015).

### 1.	Plaintiffs' Malicious Prosecution Claim Should Be Dismissed

The Court does not need to conduct a choice of law analysis for the malicious prosecution claim because Plaintiffs' claim fails under Mexican or New York law.  To establish the claim under New York law, a plaintiff must allege: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4)

16

actual malice. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995); *Broughton v. State of N.Y.*, 335 N.E.2d 310, 314 (N.Y. 1975). Mexican law is similar. ¶¶ 402, 408; Cruz Decl. ¶¶ 17-19. The malicious prosecution claim fails on every element.[5]

 ***No Favorable Termination.*** The amended complaint concedes, and it is apparent from public information, that Yáñez continues to face criminal charges and that OSA remains in bankruptcy and under the administration of a court-appointed trustee. ¶ 372; Bard Decl. ¶ 17, Torre Decl. ¶¶ 26-30. This lack of favorable termination alone is sufficient to dismiss the malicious prosecution claim. *See Amaker v. Coombe*, 1998 WL 637177, at *9 (S.D.N.Y. Sept. 16, 1998) (plaintiff failed to show the prosecution was disposed of in his favor when his appeal was pending); *Guthrie v. U.S. Fed. Bureau of Prisons*, 2010 WL 339759, at *5 (S.D.N.Y. Jan. 26, 2010) (because "[p]laintiff was, in fact, incarcerated after a conviction, which he does not allege has been overturned, he cannot claim that the proceedings terminated in his favor.").

 ***Probable Cause Has Already Been Found.*** The Mexican criminal courts have already determined, as a matter of Mexican law, that there was probable cause to bring the charges against Yáñez, and the Mexican bankruptcy court has appointed trustees to manage OSA and has already declared it bankrupt and subject to liquidation. *See* Bard Decl. ¶¶ 7, 12, 16; Torre Decl. ¶¶ 20-21. This also requires dismissal of Plaintiffs' claims. *Brown v. N.Y. City Hous. Auth.*, 2015 WL 4461558, at *6 (S.D.N.Y. July 20, 2015) (Sullivan, J.) (plaintiff failed to demonstrate that the proceeding was commenced or continued without probable cause); *Brown v. Roland*, 627

---

[5] To the extent New York law applies, the malicious prosecution claim also fails because Plaintiffs have not pleaded special damages. *Wilhelmina Models, Inc. v. Fleisher*, 797 N.Y.S.2d 83, 85 (App. Div. 2005); *see also Morea v. Saywitz*, 2010 WL 475302, at *3 (E.D.N.Y. Feb. 8, 2010) ("specific and measurable losses [] must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts"); *Daniels v. Alvarado*, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004) ("'r]ound numbers' and general allegations of dollar amounts are insufficient as special damages").

17

N.Y.S.2d 791 (App. Div. 1995) (same); *Tray Wrap, Inc. v. Pac. Tomato Growers Ltd.*, 18

Misc.3d 1122(A), at *19 (Sup. Ct. N.Y. Cty. 2008) (same), *aff'd*, 877 N.Y.S.2d 71 (App. Div.

2009).

   ***Citigroup Did Not Commence Criminal Proceedings Against Plaintiffs.***  Plaintiffs

allege that, "[a]s part of Citi's effort to foist blame on [Plaintiffs], Citi officers met with

representatives of the Mexican Attorney General's office and repeated the false allegations from

Citi's public statements—that is, that [OSA] had engineered a substantial fraud on Banamex."

¶ 313.[6]  However, a defendant "who merely furnishes information to law enforcement

authorities, who are then free to exercise their own independent judgment as to whether an arrest

will be made and criminal charges filed, will not be held liable for . . . malicious prosecution."

*Williams v. CVS Pharmacy, Inc.*, 6 N.Y.S.3d 78, 80 (App. Div. 2015) (citation omitted);

*Moorhouse v. Standard, N.Y.*, 997 N.Y.S.2d 127 (App. Div. 2014).

   ***No Actual Malice***.  In order to show actual malice, a plaintiff must show a wrong or

improper motive other than a desire to see the ends of justice served.  *Nardelli v. Stamberg*, 377

N.E.2d 975, 976 (N.Y. 1978).  Citigroup and Banamex said they were cooperating with

authorities and taking steps to recover the misappropriated funds and to hold people accountable,

including their own employees and others.  *See supra* p. 4; *see also* Bard Decl. ¶ 14.  This

provides no basis to infer actual malice, as required.  *Tray Wrap*, 18 Misc.3d 1122(A), at *18 (no

evidence of malice where the reparation action was commenced for legitimate purposes).

### 2.    Plaintiffs' Tortious Interference Claim Should Be Dismissed

   There is an actual conflict with respect to Plaintiffs' tortious interference claim, because,

unlike New York, Mexico does not recognize the claim.  Cruz Decl. ¶ 20; *Desarrolladora*

---

[6] Plaintiffs speculate that the government's seizure of OSA was done "at Citi's request," ¶ 317, but there is no factual support for this speculation.

*Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*, 666 F. App'x 17, 25 (2d Cir. 2016)

("tortious interference claim is not cognizable under the law of Mexico"); *Norte*, 2015 WL

7730980, at *12 (same); *see also Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir.

2000) ("New York recognizes a claim for tortious interference, whereas Mexico does not."). 

Because Mexican law applies for the reasons discussed above, Plaintiffs' tortious interference

claim must be dismissed.  *Norte*, 2015 WL 7730980, at *12.

But even if the court were to consider Plaintiffs' claim under New York law, it would

fail.  The elements of the claim are (1) business relations with a third party; (2) the defendant

knowingly interfered with those business relations; (3) the defendant acted for a wrongful

purpose or wrongful means; and (4) the defendant's acts injured the relationship.  *RFP LLC v.

SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011).  Here, Plaintiffs allege Citigroup

undertook a "public relations attack" after it discovered the fraudulent scheme in February 2014

to blame OSA and Yáñez "in the eyes of the public and the relevant authorities."  ¶¶ 252-312.

These allegations fail to state a claim for tortious interference.

The linchpin of Plaintiffs' claim is that Citigroup publicly blamed Plaintiffs for fraud in

the cash advance program in Mexico.  However, the public statements by Citigroup referenced in

the amended complaint do not blame Plaintiffs.  According to Plaintiffs, they nevertheless could

be read as blaming Plaintiffs because Citigroup expressed its belief that losses were confined to

advances to OSA and said Banamex employees had been held responsible only for

*in*action.  This allegedly created a mis-impression because "[t]here was at least one other Pemex

supplier with the same issues, and, on [unspecified] information and belief, there were many."

¶ 292.  However, Plaintiffs ignore their own allegations that Citigroup acknowledged the

possibility of active misconduct by Banamex employees, ¶¶ 264, 283, and that there may have

19

been similar issues with another supplier, ¶ 279, meaning the omissions Plaintiffs allege created

a mis-impression were not omitted at all.

But even if Plaintiffs' theory were supported by factual allegations (and it is not), it

would still not suffice to state a tortious interference claim because plaintiffs cannot meet the

"high burden" of pleading that Citigroup had a "wrongful purpose" or relied on "wrongful

means." *Phoenix Capital Invs. LLC v. Ellington Mgmt. Grp., L.L.C.*, 859 N.Y.S.2d 46, 48-49

(App. Div. 2008).  To properly plead a tortious interference claim on a "wrongful purpose"

theory, a plaintiff must allege the defendant's actions were "for the sole purpose of inflicting

intentional harm." *RFP*, 788 F. Supp. 2d at 196 (citing *Carvel Corp. v. Noonan*, 818 N.E.2d

1100 (N.Y. 2004)).  If there is any indication the defendant acted at least in part to advance its

own competing interests, there can be no "wrongful purpose." *Id.* (citing *PPX Enters., Inc. v.

Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)).  Plaintiffs' theory is that Citigroup

was motivated to blame Plaintiffs because of concerns about the accounting treatment applied to

the cash advance program.  ¶ 229.  Citigroup disputes this, but even if true, it would mean

Citigroup was seeking to advance its own interests, and that Plaintiffs cannot allege Citigroup

acted with a wrongful purpose.  *RFP*, 788 F. Supp. 2d at 196.

Nor can Plaintiffs allege Citigroup employed "wrongful means."  To allege a tortious

interference claim on this theory, a plaintiff must allege the "commission of a crime or an

independent tort" that is "the proximate cause of the alleged injury." *Catskill Dev., L.L.C. v.

Park Place Entm't Corp.*, 547 F.3d 115, 132-33 (2d Cir. 2008).   Plaintiffs do not accuse

Citigroup of any crime or, as discussed below, allege sufficiently that Citigroup committed any

independent tort. *Id*. at 134-135 (affirming dismissal where plaintiffs failed to allege

requirements of independent tort).  Plaintiffs also fail to allege that Citigroup was the proximate

cause of their claimed harm.  *Id*. at 133.  Plaintiffs concede, for example, that OSA already was banned from projects from Pemex for 21 months as a result of its failure to post sufficient bonds, ¶ 229, and that the criminal prosecution of Yáñez and the receivership of OSA were brought by the Mexican authorities.  ¶¶ 313-22; *see Catskill Dev.*, 547 F.3d at 133.

Finally, Plaintiffs' claim must be dismissed to the extent the amended complaint fails to identify the counterparties to the asserted contracts or business relationships that were interfered with, much less that Citigroup knew about them.  *See Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015), *aff'd in part,* 632 F. App'x 637 (2d Cir. 2015).

### 3.    Plaintiffs' Fraud Claim Should Be Dismissed

The Court does not need to conduct a choice of law analysis for Plaintiffs' fraud claims because they fail under Mexican or New York law.  To state a fraud claim under New York law, Plaintiffs must allege, with particularity, "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).  Mexican law is similar.  Cruz Decl. ¶ 15; *see also, e.g.*, *Iusacell, S.A. de C.V. v. IBM Corp.*, 2014 WL 6491757, at *3 (S.D.N.Y. Nov. 14, 2014).

***The Amended Complaint Fails to Comply with Rule 9(b).***  In order to satisfy the requirements of Rule 9(b), Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Here, rather than pleading with specificity, Plaintiffs rely heavily on the terms "Citi" and "Citi/Banamex" and impermissible group pleading to confuse the roles and actions of Citigroup, Banamex, and other entities.  For

example, Plaintiffs allege that "*Citi* initiated a false public relations campaign claiming [OSA]

and Yáñez had factored forged Pemex invoices," but each subsequent statement in support of

that allegation is attributable to Citigroup or its officers and not any other Defendant.  Elsewhere,

Plaintiffs allege unidentified "Citi/Banamex officials reviewed [OSA's] work estimates every

month with [OSA]," even though it is clear they are referring to Banamex

employees.  ¶ 219.  This "clumping" of defendants is not permitted and requires

dismissal.  *380544 Can., Inc., v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 218 (S.D.N.Y. 2008)

(citations omitted); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)

("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent

statements to 'defendants'") (citations omitted).

> ***No Actionable Misstatements or Omissions***.  Although Plaintiffs allege that "Citi

initiated a false public relations campaign" to "blame [OSA] and Yáñez for Banamex's fraud,"

Am. Compl. p. 43 (Headings for Sections 6.B *and* 6.B(1)), the specific statements actually

attributed to Citigroup do not support this allegation.  Rather, the statements by Citigroup only

(1) reveal that a fraud occurred without identifying which entity or individuals committed it, *e.g.*,

¶ 256 ("a significant portion of the accounts receivable . . . financing program were fraudulent";

¶ 263 ("it appears . . . invoices from [OSA] were falsified")); (2) describe the resulting financial

losses to Citigroup and Banamex, *e.g.*, ¶¶ 265, 273; (3) state that Citigroup "believed 'the fraud

[was] isolated to this particular client,'" ¶ 258; and (4) describe Citigroup's intention to

coordinate with law enforcement to "seek[] accountability for anyone involved," *e.g.*, ¶ 259.

None of these statements is alleged to be false or known to have been false when made.  *Valdan*

*Sportswear v. Montgomery Ward & Co.*, 591 F. Supp. 1188, 1190-91 (S.D.N.Y. 1984).

> ***No Reliance***.  The amended complaint nowhere indicates how Plaintiffs relied on

Citigroup's public statements to their detriment, as required.  *See Modell's N.Y. v. Noodle Kidoodle*, 662 N.Y.S.2d 24, 26 (App. Div. 1997).  On the contrary, Plaintiffs expressly theorize that the "statements were crafted to cast the blame on [OSA] and Amado Yáñez *in the eyes of the public and the relevant authorities*" – not for the purpose of inducing reliance by Plaintiffs themselves.  ¶ 296 (emphasis added).  Third-party reliance cannot support a claim for fraud, even if such third parties are alleged to have relied on the misrepresentations in a manner that caused injury to the plaintiff.  *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008); *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 489 (N.Y. 2016).

**No intent.**  Plaintiffs allege that "Citi" knew that OSA could not have committed a fraud in connection with the cash advance program and, in any event, that "Citi" had independent knowledge of OSA's finances and knew neither OSA nor Yáñez had motive to commit fraud.  ¶¶ 326-346.  Rather than allege scienter on the part of any individual, Plaintiffs allege only "collective scienter," which is impermissible.  *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988); *see also AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 2006 WL 1206333, at *3 (S.D.N.Y. May 2, 2006).

## B.    PLAINTIFF OSA LACKS STANDING TO BRING SUIT

All claims asserted by OSA also fail at the threshold for lack of standing.  OSA has been placed under the exclusive control of a trustee (which is not a party here), and, as a matter of Mexican law, the trustee must have authorized OSA to bring these claims in order for it to have standing.  *See* Torre Decl. ¶¶ 7, 10, 26-30.  Plaintiffs' conclusory allegation that the filing of this action was "authorized by the former SAE receiver" – without any indication of the date such authorization was granted, the identity of the alleged receiver providing such authorization, whether the purported authorization remains valid given that the "former" SAE receiver is no longer the administrator of OSA, and whether the bankruptcy court approved the authorization –

23

is inadequate to sufficiently allege such authorization.  *See Teleservices Jam., Ltd. v. West Telemarketing Corp.*, 395 F. Supp. 2d 24, 26 (S.D.N.Y. 2005) ("plaintiff has the burden of establishing standing").

### C.    OSA FAILS TO STATE A BREACH OF CONTRACT CLAIM

The contract claim asserted by plaintiff OSA purports to allege breaches of implied covenants of good faith and fair dealing in contracts between OSA and various entities entered into in 2008 and 2012, two years prior to the discovery of the cash advance fraud.  ¶ 420.  These contracts have nothing to do with the cash advance program, which the amended complaint acknowledges was covered by a separate contract.  *See supra* p. 3.  The contracts allegedly contain New York choice of law provisions, ¶¶ 366-67, which Citigroup assumes apply for purposes for this motion.

This claim must be dismissed as to Citigroup because it is not alleged to have been a contract party.  *See* ¶¶ 88 (alleging 2008 agreement was between OSA, Citibank, N.A., and Banamex); 99 (alleging 2012 "Cal Dive" agreement was between OSA and Citigroup Global Markets Inc.), 108 (alleging same for 2012 "Goliath" agreement), 117-18 (alleging same for "Project Blue").  "It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has . . . assumed or been assigned the contract." *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 470 (S.D.N.Y. 2016); *see also In re Cavalry Constr., Inc.*, 428 B.R. 25, 30 (S.D.N.Y. 2010).   It makes no difference that Citigroup is a parent of alleged contract parties because "'a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both.'" *S.M. v. Oxford Health Plans (N.Y.), Inc.,* 94 F. Supp. 3d 481, 498 (S.D.N.Y. 2015) (quoting *Carte Blanche (Sing.) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993)).

24

The breach of contract claim also should be dismissed because it is baseless.  As a matter of basic contract law, the implied obligation of good faith and fair dealing protects parties' expectations based on the *express* terms of a contract.  *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989).  The allegedly breached contracts have nothing to do with the cash advance program, and any implied obligations cannot be used to shield against any conduct that "may incidentally lessen the other party's anticipated fruits from the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006); *see also ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract.").

## CONCLUSION

Plaintiffs have already amended their complaint in response to Citigroup's pre-motion letter, and had several months to do so.  For the reasons set forth above, Citigroup respectfully requests that this Court dismiss Plaintiffs' amended complaint with prejudice.

DATED:  New York, New York
             January 12, 2018

SHEARMAN & STERLING LLP

By: */s/ Adam S. Hakki*
Adam S. Hakki
Daniel C. Lewis
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
ahakki@shearman.com
daniel.lewis@shearman.com

*Counsel for Defendant Citigroup Inc.*