UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OCEANOGRAFÍA, S.A. DE C.V. and
AMADO YÁÑEZ OSUNA,

    *Plaintiffs*,

  -against-

CITIGROUP, INC., CITIBANK, N.A.,
CITIGROUP GLOBAL MARKETS, INC.,
and BANCO NACIONAL DE MÉXICO, S.A.,

    *Defendants.*

No. 17-CV-1434 (RJS)

JURY TRIAL DEMANDED

---

## OCEANOGRAFÍA'S AND YÁÑEZ'S OPPOSITION TO CITIGROUP'S MOTION TO DISMISS

Maney & González-Félix PC
Mark Maney
(admitted *pro hac vice*)
712 Main Street, Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

COUNSEL FOR OCEANOGRAFÍA, S.A. DE C.V.
AND AMADO YÁÑEZ

TABLE OF CONTENTS

Table of Authorities ……………………………..…………………………………...…….……v

Preliminary Statement…………………………..…………………………………………1

Factual Background………………………………………………………………………2

  1. Citi cannot rewrite the allegations in the Amended Complaint. . . . . . .. . . . . . . . . . . . 2

  2. This action is not about Banamex's fraud, but Citi's (not Banamex's) cover up. . . . . . . . . . 2

  3. The dispute over what Citi said and the basis for its statement is centered
     in the United States……………………………………………………………..……3

  4. The witnesses and documents related to Citi's cover-up are in New York……………..……4

  5. This action raises claims of breach of, and interference with, New York contracts………...4

  6. Oceanografía and Yáñez have been exonerated……………………………………….……5

Argument…………………………………………………………………………..……….6

  1. There is no basis for a dismissal for forum non conveniens…………………….………6

    A. Many of the claims in this matter were required to be filed in this Court………..……...6

    B. Federal and New York statutory policy forecloses dismissal of this action as a
       forum non conveniens…………………………………………………………………6

      (1) This Court has a duty to try this matter pursuant to the Edge Act………………….6

      (2) Pursuant to New York law, this action cannot be dismissed for
          forum non conveniens……………………………………………………………..8

    C. Citi has not met its burden of proving litigation in this Court would be oppressive……9

    D. Yáñez and Oceanografía's choice of forum is entitled to substantial deference………10

      (1) Mexican citizens are entitled to at least the same deference as
          US citizens living abroad……………………………………………………………..10

      (2) The plaintiffs had overwhelming reasons to bring suit in this forum..……………10

        (a) The defendants were not amenable to jurisdiction in Mexico………………….11

(b) Oceanografía and Yáñez have been subjected to years of false
and defamatory accusations in Mexican courts……………..……………12

(c) As a result of Citi's advice, Oceanografía has substantial
US litigation experience……………………………………………...……………12

(3) Citi has not proved a motive for forum shopping……….……………………...13

E. Citi's motives are suspect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 13

(1) The Second Circuit has cautioned skepticism regarding Citi's motives . . . . . . . . . 13

(2) Citi was sued in its home, which weighs heavily against dismissal . . . . . . . . . . . . . .15

F. The plaintiffs concede that Mexican courts are generally adequate forums……..……15

G. Public interest factors weigh in favor of maintaining jurisdiction……………………..16

(1) Federal and State policies favor retaining jurisdiction in this forum... . . . . . . . . . . . .16

(2) There is little difference between the relevant New York and Mexican law. . . . . . . .16

(3) Any language barrier is neutral……………………………………………………16

(4)  Mexican courts are more congested than New York federal courts… . . . . . . . . . . . .17

H. The private interest factors………………………………………………………………17

(1) Cross-border discovery is expected in Edge Act matters. …………………………....17

(2) The burdens of cross-border discovery weigh heavier on the plaintiffs
than on its………………………………………………………………………………17

(3) Moving this action to Mexico would prevent discovery into Citi's US conduct. . . . 18

(4) It is easier to obtain evidence from Mexico than from the United States. . . . . . . . . .18

(a)  The parties will not have to utilize the Hague Convention……………………19

(b)  Mexico responds to Hague requests faster than US courts……………………19

(c)  Mexican Bank Secrecy laws are irrelevant……………………………………....19

(5)  The plaintiffs' temporary legal difficulties are irrelevant…………………………20

2.  The Amended Complaint adequately pleads claims against Citi. . . . . . . . . . . . . . . . . . . . . . 20

A. Citi's arguments are based on altered facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

B. The plaintiffs have a viable claim for malicious prosecution…………………………..21

C. Citi tortiously interfered with the plaintiffs' contracts and business relationships in the United States and Mexico……………………………………………22

D. Citi committed fraud………………………………………………………………23

E. Oceanografía has standing………………………………………………………..24

F. Citi is bound by the New York contracts………………………………………………25

3. Conditional Motion for Leave to Amend…………………………………………..25

Table of Authorities

*Cases*

*A.I. Trade Fin., Inc. v. Petra Intern. Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995). …………..………..7

*Aguas Lenders Recovery Group, LLC v. Suez, S.A.,* 585 F.3d 696 (2d Cir. 2009)..…………………….2, 6

*American Intern. Group, Inc. v. Bank of America*, 712 F.3d 775 (2d Cir. 2013) …...………………….....7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………….........20

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F.Supp.2d 348 (S.D.N.Y. 2002)……...........9

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.,*
701 F.Supp.2d 356 (E.D.N.Y. 2010)……………………………………………………….......24

*Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822 (2d Cir. 1990)…………………………….9

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)……………………………………............22

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)…………………………………………….23

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)…………………………..8

*Dexia SA/NV v. Bear Stearns & Co., Inc.*, 924 F.Supp.2d 555 (S.D.N.Y. 2013)……………………..7

*DiRienzo v. Philip Serv. Corp.*, 294 F.3d 21 (2d Cir. 2002)………………………..………9, 10, 13, 15, 16

*Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*, 473 F. Supp. 680 (S.D.N.Y. 1979)……………24

*Foman v. Davis*, 371 U.S. 178 (1962)…………………………………………………………….........25

*Gross v. British Broad. Corp.*, 386 F.3d 224 (2d Cir. 2004)……………………………………………….9

*Guidi v. Inter-Cont'l Hotels Corp.* 224 F.3d 142 (2d Cir. 2000)…………………………………….13, 17

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)……………………………………………….....15

*Honduras Aircraft Registry Ltd. v. Gov't of Honduras*, 883 F.Supp. 685 (S.D. Fla. 1995)……………..12

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001)…………………………….10, 11, 12, 13, 14

*Irish Nat. Ins. Co. v. Aer Lingus Teoranta*, 739 F.2d 90 (2d Cir. 1984)……………………………….10

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)……………………………………….9

*Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604 (3d Cir. 1991)……………………………15

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986)……………………………………………..25

*M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972)………………………………………6

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)…………………………………22

*Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1ˢᵗ Cir. 1992)……………………………………15

*Murray v. British Broad. Corp.*, 81 F.3d 287 (2d Cir. 1996)……………………………………10

*N.B. Garments (PVT.) Ltd. v. Kids Int'l Corp.*, 2004 WL 444555 (S.D.N.Y. 2004)…………………24

*Palacios v. The Coca-Cola Co.*, 757 F.Supp.2d 347 (S.D.N.Y. 2010)…………………………...........10

*Reid-Whalen v. Hansen*, 933 F.2d 1390 (8ᵗʰ Cir. 1991)………………………………………...........15

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir.1997)…………………………………22

*Russo v. State of N. Y.*, 672 F.2d 1014 (2d Cir. 1982), *modified on reh'g*,
721 F.2d 410 (2d Cir. 1983)……………………………………………………………...22

*Samsun Logix Corp. v. Bank of China*, 740 F.Supp.2d 484 (S.D.N.Y. 2010)…………………………...7

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003)…………………………………………22

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978)……………………………………………15

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972)……………………………………………………24

*Simmtech Co., Ltd. v. Citibank, N.A.*, 634 Fed. Appx. 53 (2d Cir. 2016)…………………….................14

*State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F.Supp.2d 313 (S.D.N.Y.
2002)……………………………………………………………………………….............13

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190
(2d Cir. 2008)……………………………………………………………………………24

*Terra Firma Invest. (GP) 2 Ltd. V. Citigroup, Inc.*, 725 F.Supp.2d 438 (S.D.N.Y. 2010)…..................15, 16

*United States v. Agurs*, 427 U.S. 97 (1976)……………………………………………………..22

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000)……………………………………9, 10

*Statutes, Rules, and Treatises*

12 U.S.C. § 611a……………………………………………………………………………7

12 U.S.C. § 632………………………………………………………………………7, 8, 17

28 U.S.C. § 1782………………………………………………………………..............19

C. Wright & A. Miller, Federal Practice and Procedure § 1298……………………………..25

Federal Rule of Civil Procedure 9………………………………………………..........23, 24, 25

Federal Rule of Civil Procedure 12(b)(6)…………………………………….............23, 24, 25

Federal Rule of Civil Procedure Rule 15………………………………………………..25

McKinney's CPLR Rule 327…………………………………………………..............8, 9

McKinney's General Obligations Law § 5-1402……………………………………8, 9

PRELIMINARY STATEMENT

Oceanografía and Yáñez sued Citi[1] at the site of its home office for a number of reasons, including that Citi—a publicly traded US company—orchestrated its cover-up from the United States and four separate contracts—that support more than $1 billion of the plaintiffs' damages—required suit to be filed here. In addition, as a result of Citi's advice that Oceanografía seek its long-term capital in the United States, the plaintiffs have far more experience litigating in the US than in Mexico. And, the experience they do have in Mexican courts involves years of turmoil, public humiliation and press reports parroting Citi's calumny. That the plaintiffs would like to avoid continuing such public flogging is hardly surprising.

Citi, however, claims it is too inconvenient to litigate this case in its home—the very forum it demanded in all of its Oceanografía contracts. Citi is forum shopping against its own backyard. Its motives are suspect and have nothing to do with justice or convenience. Instead, Citi seeks to avoid discovery into Citi's (not its subsidiary's) conduct. This Court should follow the advice of the Second Circuit and arm itself with an appropriate degree of skepticism about Citi's motives and its motion.

To support its disingenuous claim of inconvenience, Citi posits a set of facts that contrast entirely with those in the Amended Complaint (the "AC"). Citi goes so far as to now deny it ever claimed Amado Yáñez committed fraud. *E.g.*, ECF38:4. That denial places Citi and its New York based campaign against Yáñez and Oceanografía at the center of this dispute. Citi's rewriting tactic also includes ignoring any fact that invalidates its narrative. Most notably, Citi's motion fails to address Oceanografía's claims that Citi breached contracts that contain New York choice of law and forum clauses. These contract claims cannot be dismissed on the basis of forum non conveniens. As a result, Citi asks this Court to divide this matter in two. It does not do so for convenience or in the interests of justice, but for its own forum shopping reasons.

---

[1] As in the AC, the term "Citi" does not include Banamex.

FACTUAL BACKGROUND

1. *Citi cannot rewrite the allegations in the Amended Complaint.*

In deciding a motion to dismiss, including one based on forum non conveniens, decided without a factual hearing, this Court must accept the facts alleged in the AC as true. *Aguas Lenders Recovery Group, LLC v. Suez, S.A.,* 585 F.3d 696, 697 (2d Cir. 2009).

2. *This action is not about Banamex's fraud, but Citi's (not Banamex's) cover-up of that fraud.*

To shore up its motion, Citi asks this Court to reject the plaintiffs' own statement of their claims, particularly that their claims arise out of Citi's cover-up, not Banamex's fraud. Compare:

- o  Citi's memorandum: "The allegedly fraudulent scheme that gives rise to this action involved cash receivable financing provided by Banamex to OSA in connection with services provided by OSA to Pemex," ECF38:3, with

- o  The Amended Complaint: "The claims raised against Citi and Banamex in this lawsuit relate *entirely* to the Citi managed cover-up, not the underlying fraud committed by Banamex in Mexico," ECF34:¶3 (emphasis in original).

As stated in the AC, neither Oceanografía nor Yáñez were harmed by Banamex's accounting of its advances to Oceanografía as Pemex debt, and neither brings claims based on that bank fraud. *See, e.g.,* ECF34:¶¶1-3. Oceanografía and Yáñez were damaged by Citi's cover-up of Banamex's internal bank fraud, which Citi orchestrated and launched from its New York Offices. ECF34:¶¶256-312.

Citi asks this Court to reject this core allegation—something foreclosed by the Rules—because it is somehow "belied" by the fact that Oceanografía needed time to recover its documents in Mexico. ECF38:9. But, the fact that Oceanografía was seized in a criminal procedure due to Citi's false claims is the genesis of this action, not an excuse for avoiding it. Yes: it took Oceanografía months to get copies of even the New York contracts described in the AC—contracts Citi studiously ignores—but that delay was caused chiefly by Citi's cover-up, with some unexpected assistance from a few natural disasters. Oceanografía is now free of the criminal receiver and (since Citi's motion) out of civil bankruptcy as well. Ex.1:¶¶9,13.

*3.  The dispute over what Citi said and the basis for its statements is centered in the United States.*

Citi tries so hard to distance itself from its own conduct that it baldly claims that it "did not say OSA or Yáñez were responsible" for Banamex's forgeries. ECF38:4. The assertion not only contradicts the AC's allegations—"The foundation of this case is that Citi falsely laid the blame for the forgeries on Oceanografía and Yáñez," ECF34:¶22—it is patently false. Citi's SEC filings contained sections headed, "Oceanografía Fraud." ECF34:¶272. While Citi asks this Court to believe that Citi's public statements left open the possibility that Banamex officials, not Yáñez, committed the bank fraud, Citi tried to avoid the SEC's inquiry by telling the Commission that the Banamex employees, "in Citigroup's view, while not actively participating in the fraud, failed to perform their duties adequately and [their] failures may have contributed to Citigroup's failure to identify the fraud earlier," clearly placing the blame on Oceanografía. Ex.2:Ex.C, at 3.

Citi's motion also contradicts the sworn statements of Citi's agents in the Mexican criminal courts. At the same time Citi now claims it was *not* naming Yáñez and Oceanografía as "perpetrators," ECF38:4, Citi's agent, Juan Carlos Villaseñor González (a Banamex officer), filed a "denuncia" and "querella" (or accusation and complaint) against Amado Yáñez as the "necesaria querella de parte ofendida" (or necessary victim's complaint) formally placing Citi/Banamex as the victim and Oceanografía and Yáñez as the perpetrators of the crime. Ex.1:¶21.

"Citi's attack had exactly the result Citi intended—Oceanografía and Amado Yáñez received the blame for Banamex's fraud." ECF34:¶302. For example: "The Economist noted that Citi 'so far has cast itself as the victim….'" ECF34: ¶306. As in Citi's letter to the SEC, the Economist also noted "that Citi had fired a number of Banamex employees, but '[w]hen it sacked them, Citi stressed that the employees were paying the price for failing to detect the fraud, not for taking part in it.'" ECF34:¶306. A March 24, 2014, a Forbes article noted that "Citigroup's charge prompted the Mexican Attorney General's office to issue a summons against Yáñez…." ECF34:¶307.

### 4. *The witnesses and documents related to Citi's cover-up are in New York.*

Citi's new disavowal that it blamed Yáñez makes trial in New York essential. The evidence and witnesses regarding what Citi said to the press, the SEC and the DOJ—and the basis for saying it—are in Citi's New York office where Citi published its press releases and SEC filings. ECF34:¶¶22. Even in Mexico, Citi was ultimately in charge. ECF34:¶243. In fact, Villaseñor, who signed the criminal complaint against Yáñez, has testified that he did so under the instructions of Samuel Libnic— Citigroup's General Counsel for Latin American Affairs. Ex.1:¶21; ECF34:¶242.

On the other hand, Citi acknowledges that it has gathered the evidence related to Banamex's Mexican fraud as part of Citi's extensive review of that fraud and in response to the SEC and DOJ investigations. ECF34:¶¶16, 242-43, 370. Certainly, Citi claimed to have enough information in hand to blame Yáñez and Oceanografía. ECF34:¶¶256-93. Citi also supervised Banamex's advances to Oceanografía and most of the Banamex officials dealing with Oceanografía also worked for Citi and had citi.com email addresses. ECF34:¶¶334-36.

Thus, Citi's factual assertion that "most, if not all, of the relevant evidence is located in Mexico.," ECF38:10, contradicts the AC's allegations and is manifestly untrue.

### 5. *This action raises claims of breach of, and interference with, New York contracts.*

Apparently unable to address the significance of the four New York contracts with New York choice of forum clauses, Citi simply ignores them. The unmentioned contracts included the following:

- o  a $335 million bond issuance (marketed in the US and not Mexico), ECF34: ¶83;

- o  the acquisition of a publicly traded US company with operations in the United States (Cal Dive), ECF34:¶96;

- o  a private offering to US investors ("Project Blue"), ECF34:¶116, and

- o  the acquisition of the Goliath in the United States, ECF34:¶107.

Citi fails entirely to address the claims for the breach of, and tortious interference with, these contracts,

which covered US deals worth hundreds of millions of dollars. Except for the bond issuance, these contracts expressly included all Citi affiliates—and thus Citigroup. ECF34:¶¶100, 108, 118.

By Citi's own estimate, the loss of Cal Dive and the Goliath, alone, cost Oceanografía about $700 million—making Oceanografía's total US-based loss more than $1 billion or about a third of its estimated damages. ECF34¶¶383-91, 394.

In contrast, Citi's motion asserts that "Plaintiffs claim injuries in Mexico…." ECF38:1.

### 6. *Oceanografía and Yáñez have been exonerated.*

On March 1, 2014, at Citi's request and supposedly to preserve Oceanografía's assets to protect the self-proclaimed victims (Citi and Banamex), Oceanografía was seized in a criminal procedure. ECF34:¶¶316-18. Citi concedes that criminal process has been dissolved. ECF38:5. Oceanografía's *civil* bankruptcy—engendered by Citi's cover-up—lasted longer than the *criminal* seizure, but the continuation of a *civil* bankruptcy does not alter the admitted fact that the *criminal* process concluded in Oceanografía's favor. In any event, the argument is moot because Oceanografía is now out of civil bankruptcy. Ex.1:¶13.

The AC also squarely alleges that Yáñez has been exonerated. ECF34:¶372. Citi contests that allegation with the unsupported declaration of a Banamex lawyer, ECF41, but the self-serving declaration of counsel for a party is no basis for ignoring the AC's allegations. The declaration from Banamex's lawyer does not even discuss the appellate opinion in question. *Id.*

The actual appellate opinion protects Amado Yáñez from the charges brought against him because those charges violate the Mexican Constitution as being unproven and without basis. Ex.1:¶¶25-26. In particular, the Court concludes that the evidence presented by Banamex was unsupported, and there was no evidence that Yáñez provided the documents Banamex claims were falsified. Ex.1:¶26. That appellate opinion is binding in Mexico unless and until it is overturned or new evidence is presented, which has not occurred. Ex.1:¶¶27-28.

ARGUMENT

*1. There is no basis for a dismissal for forum non conveniens.*

    *A. Many of the claims in this matter were required to be filed in this Court.*

None of the breach of contract claims can be dismissed for forum non conveniens. The Citi-drafted contracts for Project Blue and the acquisitions of Cal Dive and the Goliath required Oceanografía to "agree not to commence any suit, action or proceeding relating thereto except in [New York] court" and to waive any objection on the basis of forum non conveniens. ECF34:¶¶101, 110-11, 118. The contract for the US bond issuance stated that all parties (including Banamex, Citibank, and Oceanografía) could be sued in New York and waived any argument that suit in New York was inconvenient. ECF34:¶¶88, 90. Therefore, all of the forum selection clauses are mandatory. *Aguas Lenders*, 585 F.3d at 700 (permissive forum selection clause coupled with a waiver of forum non conveniens argument becomes mandatory).

Mandatory forum selection clauses are to be enforced unless they are unreasonable or unjust or were obtained through fraud or overreaching. *Aguas* Lenders, 585 F.3d at 700 (citing, *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972)).

Three of the four contracts were signed by Citigroup Global Markets (a defendant) in behalf of all Citi "affiliates" (which includes Citigroup). ECF34:¶¶100, 108, 118. Therefore, the fact that a Citigroup officer did not sign these contracts does not prevent enforcement of the clauses to defeat Citigroup's forum non conveniens motion. "We find ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders*, 585 F.3d at 700 (citations omitted).

At worst, since the breach of contract claims against Citi's affiliates—raising one billion dollars in damages—"must remain in New York, it would be quite inconsistent with the purposes of forum non conveniens to dismiss the remaining claims under that doctrine." *Aguas Lenders*, 585 F.3d at 700.

B.  *Federal and New York statutory policy forecloses dismissal of this action as a forum non conveniens.*

(1) *This Court has a duty to try this matter pursuant to the Edge Act.*

The Edge Act is the sole jurisdictional basis for this action. ECF34:¶73.

The Edge Act grants jurisdiction to federal courts in actions involving "international or foreign banking" transactions or "other international or foreign financial operations" of federally chartered banks. 12 U.S.C. § 632.

"The overall objectives of the Edge and Glass–Steagall Acts were to establish and strengthen the national banking system and stimulate international trade by providing *a uniform national regulatory apparatus.*" *Samsun Logix Corp. v. Bank of China*, 740 F.Supp.2d 484, 491 (S.D.N.Y. 2010) (citation omitted; emphasis added). The Act states: "The Congress declares that it is the purpose of [the Edge Act] to provide for the establishment of international banking and financial corporations *operating under Federal supervision* with powers sufficiently broad to enable them to compete effectively with similar foreign-owned institutions in the United States and abroad." 12 U.S.C. § 611a (emphasis added).

"To further this purpose, the Edge Act provides a federal forum wherever a federally chartered bank faces liability on claims derived from international banking transactions." *Dexia SA/NV v. Bear, Stearns & Co., Inc.*, 924 F.Supp.2d 555, 557 (S.D.N.Y. 2013). "The apparent purpose of § 632 was to give Edge Act banks predictable uniformity of adjudication *supervised in the federal courts* …." *American Intern. Group, Inc. v. Bank of America*, 712 F.3d 775, 779 (2d Cir. 2013) ("*AIG*") (emphasis added). "Federal *supervision* of these financial institutions was seen as essential if they were ever to succeed in the international marketplace." *A.I. Trade Fin., Inc. v. Petra Intern. Banking Corp.*, 62 F.3d 1454, 1462 (D.C. Cir. 1995) (emphasis added; cited with approval in *AIG*, 712 F.3d at 779).

That Citi might prefer in this case to forego the legislatively-mandated federal supervision in favor of a foreign court that it prefers is of no moment. The federal supervision mandated by the

Edge Act does not serve the interests of individual banks but was designed to create "a new type of federally controlled institution intended to increase the stability of, and the public's confidence in, international markets." *AIG*, 712 F.3d at 779. Accordingly, any party may invoke Edge Act jurisdiction, so jurisdiction is not dependent on the whims of the bank in question. 12 U.S.C. § 632 ("any defendant in any such suit may, at any time before the trial thereof, remove such suit").

The Act's purpose, therefore, is to promote the foreign banking operations of US banks by providing a federal forum for actions involving the banks' "foreign financial operations." That purpose is vitiated if federal courts refuse to accept jurisdiction on the basis that the action involves foreign banking. As the Second Circuit stated: "As the activity sought to be encouraged and facilitated by the Act is the engagement by Edge Act banks in offshore banking transactions, it makes perfect sense that the ambiguous statute assuring them access to federal courts be understood to give that access in suits relating to the activities the Act seeks to promote, to wit, the banks' engagement in offshore banking transactions." *AIG*, 712 F.3d at 781.

The Supreme Court has stated that the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This Court cannot avoid that obligation because this action relates to foreign banking when that is the very reason that Congress granted jurisdiction to this Court in this first place.

### *(2) Pursuant to New York law, this action cannot be dismissed for forum non conveniens.*

Even though the forum selection clauses directly relate to only some, albeit substantial, claims, New York law dictates that "the court shall not stay or dismiss any *action* on the ground of inconvenient forum" when "the *action*" relates to a contract governed by section 5-1402 of New York's General Obligations Law if the parties "have agreed that the law of this state shall govern their rights or duties in whole or in part." McKinney's CPLR Rule 327 (emphasis added). The four New York contracts are subject to section 5-1402 because they involve multi-million dollar transactions and contain

"provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state." McKinney's General Obligations Law § 5-1402.

It is an open question whether Rule 327 binds this Court, but as one court stated as to a similar provision, "[i]t is hard to imagine a more clear indication that this forum has a strong public interest in the litigation of plaintiffs' claims than a piece of legislation explicitly stating that interest." *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F.Supp.2d 348, 367–68 (S.D.N.Y. 2002); *see also Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822, 827 (2d Cir. 1990) (not reaching whether Rule 327 is binding). Thus, regardless of whether this Court is bound by Rule 327, this Court should follow New York's express statement, particularly since it comports with the purpose of the Edge Act—the sole reason this action is before this Court and not a New York state court.

### C. Citi has not met its burden of proving litigation in this Court would be oppressive.

Citi claims that this Court can dismiss this action on the sole basis that "a more appropriate forum exists," citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 107 (2d Cir. 2000). ECF38:7. The *Wiwa* opinion, however, does not contain the quoted passage. It appears the phrase "more appropriate forum" was first used by the Supreme Court in *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, when the Court framed the issue as whether "actions brought are vexatious or oppressive or whether *the interests of justice* require that the trial be had in a more appropriate forum." 330 U.S. 518, 529–30 (1947) (emphasis added); *see also Gross v. British Broad. Corp.*, 386 F.3d 224, 227 (2d Cir. 2004) (Court may "decline to exercise jurisdiction when the convenience of the parties and the *interests of justice* indicate a foreign forum would be the more appropriate forum.") (emphasis added).

Citi has not met the heavy burden of proving that the interests of justice requires dismissal of this action. "We reiterate, however, that plaintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo v. Philip Serv.*

*Corp.*, 294 F.3d 21, 30 (2d Cir. 2002); *see also id.* ("Of greater significance, the district court committed a legal error by failing to hold defendants to their burden of proof.").

In this case, Citi has failed to adduce proof of any oppression at all.

### D. *Yáñez's and Oceanografía's choice of forum is entitled to substantial deference.*

#### (1) *Mexican citizens are entitled to at least the same deference as US citizens living abroad.*

The plaintiffs' choice of forum cannot be ignored simply because they are Mexican. Contrary to Citi's suggestion that the plaintiffs' choice is not entitled to any deference, ECF38:7, the law is clear: "Any plaintiff's selection of a forum is entitled to deference…" *Wiwa*, 226 F.3d at 101–02. "[S]ome weight must still be given to a foreign plaintiff's choice of forum. Indeed, we have cautioned that 'this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule.'" *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (citation omitted).

Moreover, Mexico and the United States are parties to treaties and international conventions that require the equal treatment of their citizens before their respective courts, Ex.3:¶37, and therefore, this Court should apply "the same forum non conveniens standards that it would have applied to a United States citizen." *Irish Nat. Ins. Co. v. Aer Lingus Teoranta*, 739 F.2d 90, 91–92 (2d Cir. 1984). This Court has stated that the deference to be provided under such treaty obligations is equal to that of a US citizen living abroad—that is, an "intermediate measure of deference." *Palacios v. The Coca-Cola Co.*, 757 F.Supp.2d 347, 354 (S.D.N.Y. 2010) (Sullivan, J.).

#### (2) *The plaintiffs had overwhelming reasons to bring suit in this forum.*

"It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001). "We … give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate

reasons … and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." *Id.* The plaintiffs had overwhelming reasons to sue here.

### (a) The defendants were not amenable to jurisdiction in Mexico.

Although Citigroup now consents to jurisdiction in Mexico, before that concession it was far from clear that Citigroup could be sued in Mexico for its New York based cover-up. Mexican law focuses on the loci of the wrongful acts, not the damage caused by those acts, so, since Citi managed its cover-up from New York, jurisdiction in Mexican courts is questionable. Ex.3:¶¶13-19. Citi's oversight of Banamex is also insufficient to support jurisdiction. In light of several US-Mexican investment treaties, including NAFTA, that authorize foreign corporations to operate in Mexico through subsidiaries, Mexican courts are historically reluctant to exert jurisdiction over foreign parents of Mexican corporations based on their control of those subsidiaries. Ex.3:¶¶16-17.

Even with a consent to jurisdiction, there is no jurisdictional basis for suing Citigroup Global Markets or Citibank in Mexico because they did not act within Mexico. Ex.3:¶15. These defendants executed contracts with Oceanografía to conduct US business transactions—contracts that they have since breached and interfered with. ECF34:¶¶82-125. Claims related to those contracts were required to be brought here. Even with a consent to jurisdiction, Mexican courts would likely refuse to hear such claims against any Citi entity. Ex.3:¶¶15, 19.

Mexican courts would also enforce the forum selection clauses and refuse jurisdiction over any claim covered by such clauses. Ex.3:¶19. On three separate occasions, Citigroup Global Markets required Oceanografía to agree to file any future suit against a Citi affiliate in this Court. Citi cannot now decide that was a mistake.

A plaintiff who sues in this Court to ensure that it could maintain jurisdiction over the defendant is entitled to substantial deference for its choice:

> Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily

> indicate a choice motivated by desire to impose tactical disadvantage on the defendant. This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear.

*Iragorri*, 274 F.3d at 72.

Citigroup's consent to jurisdiction, therefore, might be relevant to whether Mexico is an adequate forum as to claims not covered by a mandatory forum selection clause, but it does not alter the plaintiffs' prefiling analysis of where to file suit or the deference afforded that choice.

>  (b) *Oceanografía and Yáñez have been subjected to years of false and defamatory accusations in Mexican courts.*

Amado Yáñez' experience in Mexican courts has not been pleasant. He spent 902 days in a Mexican jail waiting on the notoriously slow Mexican courts to wade through Citi's false claims and free him. Court proceedings in Mexico are public. Ex.3:¶¶51-52. So, throughout his criminal trial, Amado Yáñez and his family had to suffer the public reiteration of every one of Citi's smears in the press, where his friends and family received a weekly dose of more false claims he is a criminal.

It is no wonder that he would prefer to try his claims away from the Mexican press and in a forum in which his privacy may be protected before he can publicly vindicate himself. The Second Circuit finds such concerns legitimate reasons for seeking a US forum. In *Guidi v. Inter-Cont'l Hotels Corp.*, the court reversed a forum non conveniens dismissal in part because the district court had not adequately considered the "emotional burden" on plaintiffs of trying their claims in the forum where their loved ones were injured. 224 F.3d 142, 145 (2d Cir. 2000); *see also Honduras Aircraft Registry Ltd. v. Gov't of Honduras*, 883 F.Supp.685, 690 (S.D. Fla. 1995) (fears of unfavorable publicity weighs against dismissal), *aff'd in part and vacated in part*, 129 F.3d 543 (11th Cir. 1997).

>  (c) *As a result of Citi's advice, Oceanografía has substantial US litigation experience*

Citi advised Oceanografía to tap into the US financial markets for its fixed capital needs, including the acquisition of a number of vessels. ECF34:¶52. That advice has engendered a lot of US

litigation. In the last ten years, Oceanografía has been a party in 44 matters in US federal court, 10 times as plaintiff, 34 times as defendant. Ex.4:¶7. Oceanografía has been a party 10 times in this district. Ex.4:¶7. In contrast, during that time, Oceanografía was involved in 24 civil matters in Mexico, including appeals and interlocutory challenges. Ex.4:¶9. Thus, it was no surprise that the plaintiffs filed their lawsuit here, where they have substantial litigation experience.

### (3) Citi has not proved a motive for forum shopping.

The Second Circuit has repeatedly reversed dismissals for forum non conveniens when the defendant has not proffered proof of a motive for forum shopping. *See DiRienzo*, 294 F.3d at 28 ("[N]o evidence suggests they had an improper motive in bringing suit" in New York.); *Iragorri*, 274 F.3d at 75 ("So far as the record reveals, there is little indication that the plaintiffs chose the defendants' principal place of business for forum-shopping reasons.").

> The whole point of these decisions is to place the burden upon the defendant to show that a plaintiff, who files suit outside his district of residence, is doing so for strategic reasons. Defendants offer no compelling evidence, beyond breathless and conclusory allegations … to demonstrate that this particular plaintiff has engaged in the sort of forum shopping frowned upon by the Second Circuit.

*State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F.Supp.2d 313, 320–21 (S.D.N.Y. 2002).

Citi concedes that (apart from tortious interference), there is little difference between US and Mexican law regarding the plaintiffs' claims. ECF48:16, 21. The plaintiffs have not brought a RICO claim or other enhanced claim that might demonstrate a reason for forum shopping. Citi proffers no explanation why this Court should reject the plaintiffs' forum choice as improper.

### E. Citi's motives are suspect.

### (1) The Second Circuit has cautioned skepticism regarding Citi's motives.

Citi is trying to forum shop, not the plaintiffs.

The Second Circuit has cautioned that "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal

under the doctrine of forum non conveniens not because of genuine concern with convenience but because of similar forum-shopping reasons." *Iragorri*, 274 F.3d at 75.

Notably the Second Circuit has had to reiterate that caution expressly as to Citi, stating, "We find the district court's grant of Citibank's motion fell outside the range of permissible decisions. *Iragorri* warns that district courts must 'arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.'" *Simmtech Co., Ltd. v. Citibank, N.A.*, 634 Fed. Appx. 53, 64-65 (2d Cir. 2016). The appeal also included Citigroup, Inc. and Citigroup Global Markets. *Id.*

Dismissal of this matter for forum non conveniens would fall even further outside the range of permissible decisions because this action has far more US and New York connections than the *Simmtech* matter. Simmtech bought derivatives from Citi's Korean subsidiary. All of the underlying negotiations were in Korean, in Korea, with Citi's Korean subsidiary. *Id.* at 63. The Second Circuit nonetheless held that dismissal was an abuse of discretion because the complaint alleged that Citi in New York had managed the actions of its subsidiary and because, as here, the relevant materials for the derivative sales were created by Citi and most of the communications between the parties utilized Citi's citi.com email server. *Id.* at 64. *See* ECF34:¶¶334-35.

In a similar manner, the AC alleges Citi controlled Banamex during the cover-up and, before the cover-up, Citi created, supervised and managed the supplier finance facility that engendered Banamex's fraud. ECF34:¶129-43. In addition, as in *Simmtech*, almost all of the Banamex officials who dealt with Oceanografía were also officials of Citi's Institutional Clients Group and had citi.com addresses. *Compare Simmtech,* 632 Fed. Appx. at 63 and ECF34:¶¶333-36.

In contrast to *Simmtech*, in this matter, the tortious conduct occurred in New York, where Citi issued its false claims, and Oceanografía suffered a billion dollars in damages in the United States. Also, unlike *Simmtech*, Oceanografía executed four contracts with Citi's New York affiliates that

support the plaintiffs' breach of contract claims.

*(2) Citi was sued in its home, which weighs heavily against dismissal.*

"We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal." *Schertenleib v. Traum*, 589 F.2d 1156, 1164 (2d Cir. 1978); *see also Reid-Whalen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) ("[W]here the forum resident seeks dismissal, this fact should weigh strongly against dismissal."); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992) ("The deference accorded the plaintiff's choice of forum is enhanced when the plaintiff has chosen a forum in which the defendant maintains a substantial presence.") (multiple citations omitted).

The Supreme Court in *Gulf Oil* noted that it is "a strange argument" for a party to claim that suit in his home is an undue burden. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 510 (1947). The Third Circuit in *Lony v. E.I. Du Pont de Nemours & Co.* found it "puzzling" when Du Pont sought to give up its home-court advantage in favor of a foreign forum, noting, "Du Pont . . . seeks to move the action against it to a forum more than 3,000 miles away. It is, as Alice said, 'curiouser and curiouser.'" 935 F.2d 604, 608 (3d Cir. 1991).

As in other matters: "Three of the four Citi defendants are located in New York, and thus can hardly complain that being sued in their home location is an inconvenience." *Terra Firma Invest. (GP) 2 Ltd. V. Citigroup, Inc.*, 725 F.Supp.2d 438 (S.D.N.Y. 2010). Thus, "Citi has not shown that Terra Firma's chosen forum is 'genuinely inconvenient' and that the alternative forum is 'significantly preferable.'" "Especially given Citi's repeated demands for New York forum clauses, its "current claims of inconvenience raise questions as to [its] underlying motives." *DiRienzo*, 294 F.3d at 29.

*F. The plaintiffs concede that Mexican courts are generally adequate forums.*

Without waiving or mitigating their substantial reasons for wanting to try this matter in this Court, the plaintiffs concede that Mexican courts are generally adequate forums, but those courts cannot address the claims governed by the mandatory forum selection clauses. Ex.3:¶19.

### G. *Public interest factors weigh in favor of maintaining jurisdiction.*

#### *(1) Federal and State policies favor retaining jurisdiction in this forum.*

As set out above, the Edge Act and New York law manifest compelling public interests in having this Court determine this action.

The public interest is also demonstrated by the ongoing investigations by the SEC and the DOJ—investigations that Citi has tried to avoid by blaming the plaintiffs. ECF34:¶369. As stated in another Citi case: "As to the public factors, there is a legitimate U.S. interest in learning whether Citi, a major American bank, may be liable for fraudulent inducement, and thus subject to substantial damages." *Terra Firma Invest.*, 725 F.Supp.2d at 443.

#### *(2) There is little difference between the relevant New York and Mexican law.*

Citi concedes there is little difference between the applicable US and Mexican laws, so this matter does not present a difficult conflicts of law issue. ECF48:16, 21. Moreover, Mexican courts would most likely apply New York law to this dispute because Mexico's choice of law rules focus on the loci of wrongful conduct—here Citi's New York based cover-up—not the damage from that conduct. Ex.3:¶¶9-10. As a result, foreign law would be applied in either forum, making this at most a neutral factor. *DiRienzo*, 294 F.3d at 31.

#### *(3) Any language barrier is neutral.*

There are key documents in both English and Spanish. The four Citi contracts are in English. The one—generally irrelevant—Banamex contract is in Spanish. More critically, Citi's motion tries to parse its public statements (made in English) as avoiding any inference that Yáñez and Oceanografía committed the underlying fraud. Unraveling that key factual assertion should not be done in translation, which will necessarily occur if this matter is moved to Mexico. In other words, this is a cross-border dispute, so there is going to be some translations in either forum.

*(4) Mexican courts are more congested than New York federal courts.*

Court congestion is of "little or no present significance" in this District, which has a "full complement of judges," *Guidi,* 224 F.3d at 146 n.5, but Mexican courts are heavily congested, Ex.3:¶81. Mexican procedures also allow unlimited *amparos* (similar to an interlocutory appeal) during the course of a proceeding. Ex.3:¶80. As a result, a Mexican court would take far longer to resolve this matter than this Court; the best estimate is 7 to 8 years. Ex.3:¶79.

## H. The private interest factors

### (1) Cross-border discovery is expected in Edge Act matters.

By definition, Edge Act matters relate to "international or foreign banking" or "other international or foreign financial operations" of US banks, so all Edge Act matters are international disputes involving some cross-border discovery. 12 U.S.C. § 632. Based on an exaggerated view of the difficulty of obtaining evidence from Mexico, Citi claims Mexico is a more appropriate forum. ECF38:13-14. But, Congress created Edge Act jurisdiction precisely for foreign and international banking matters, so the exaggerated burdens cannot be a reason to avoid jurisdiction.

### (2) The burdens of cross-border discovery weigh heavier on the plaintiffs than on Citi.

The unstated and unproven premise of Citi's discovery argument is that all of the relevant evidence is in Mexico. If relevant evidence is here, then the alleged burdens would be placed on the plaintiffs if this matter is moved to Mexico.

Although Citi would like to focus on Banamex's fraud, that is *at most* half the equation. Per the AC's allegations, to the extent Banamex's fraud is relevant, it is merely as the motive for Citi's public relations attack on Oceanografía and Yáñez. There are therefore at least two tranches of evidence—(1) that related to Banamex's fraud and (2) that related to Citi's cover-up. Citi focuses on the first and ignores the more important second.

As set out in the AC, the evidence (including extensive testimony) about tranche one has been gathered and is in the United States, both because Citi ran the investigation and cover-up (including directing Banamex's criminal charges against the plaintiffs) and because Citi needed to gather the materials to respond to the SEC and DOJ investigations. ECF34:¶¶16, 242-43, 370.

The evidence and witnesses related to the far more important and relevant tranche two, on the other hand, resides exclusively in the United States. This includes former Citi employees (such as Citigroup's former co-President, Manuel Medina-Mora, and the CEO of Citi Latin America, Francisco Aristeguieta, both of whom left Citi as a result of this scandal, ECF34:¶334) and the news outlets and press agents that republished Citi's false claims.

### *(3) Moving this action to Mexico would prevent discovery into Citi's US conduct.*

The real reason that Citi wants to move this matter to Mexico is that there is no equivalent to US discovery in Mexican civil procedure. Ex.3:¶40. The parties must rely solely on documents in their possession and on witnesses they knew of at the time of filing their respective pleadings. Ex.3:¶¶40-50. Parties are generally limited to the presentation of two live witnesses. Ex.3:¶50.

The difference in the scope of discovery explains Citi's motive to forum shop. The evidence available in Mexico (tranche one) has already been gathered. What is missing is the evidence relevant to what Citi said—which Citi critically now denies—and why Citi said it—that is, the information relevant to Citi's cover-up (tranche two), which is the evidence critical to the plaintiffs' case.

So, moving this action to Mexico insures that Citi can avoid discovery of the evidence of its wrongs. The interests of justice will not be served by making the access to truth more difficult.

### *(4) It is easier to obtain evidence from Mexico than from the United States.*

This Edge Act matter is inherently an international dispute, so some cross-border discovery will be necessary. To the extent that is a burden, however, that burden hits harder if this action is dismissed.

*(a) The parties will not have to utilize the Hague Convention.*

Even if Citi had not already gathered the relevant evidence from Mexico, there would be little need to rely on the Hague Convention. First, Mexico has a statutory provision similar to 28 U.S.C. § 1782, which allows parties to seek discovery directly in Mexican courts in support of a foreign proceeding. Ex.3:¶¶56-58. Discovery under this statute generally takes 3 to 6 months, so few parties resort to the Hague Convention. Ex.3:¶¶56-58. Second, Pemex documents can be obtained through the Mexican equivalent of a FOIA request (usually within a month). Ex.3:¶¶59-62. In fact, if Pemex documents cannot be obtained through such a request, they cannot be obtained through the Hague Convention. Ex.2:¶14.

*(b) Mexico responds to Hague requests faster than US courts.*

Even if resort to the Hague Convention were necessary, Mexico has a faster response time to Hague requests than the United States. Mexico's 2014 report on Hague Convention requests states that Mexico responded to 2 requests in 2-4 months, 7 in 4-6 months, and 2 in 6 months to a year. Ex.3:¶¶69-71. No response took more than a year, yet without support, Citi's expert claims the response time is one to two years. ECF42:¶25. On the other hand, Mexico reports that Hague requests from Mexico to the United States usually take more than 16 months. Ex.3:¶74. In addition, Mexican law imposes significant hurdles before a party can initiate a Hague request, so it is more difficult to start the Hague process within Mexico. Ex.3:¶¶76-77.

Therefore, to the extent the Convention is relevant, it weighs in favor of retaining jurisdiction.

*(c) Mexican Bank Secrecy laws are irrelevant.*

Pursuant to the provisions of NAFTA and Mexican bank secrecy laws, Citi has access to Banamex's records and can use those records in the normal course of business, including in defending this action. Ex.2:¶¶15-22. Yet, parroting the language of an argument Citi made in a Florida matter brought against Citi by Oceanografía's creditors for the underlying fraud in Mexico, Citi argues that

"Mexican bank secrecy laws prevent Banamex from sharing information about its customers (including OSA and Pemex) *absent permission from* the Mexican banking regulator or *the customer*." ECF38:11-12 (emphasis added). In this case, the argument misses the point because both Oceanografía and Banamex are parties to this action, and therefore Banamex's Oceanografía records are available here. Ex.2:¶¶9-12. Pemex records are not covered by Mexican bank secrecy laws, but by the rules governing governmental documents. Ex.2:¶¶13-14. In addition, Citi has not indicated any necessary Banamex documents that are not already public as part of the criminal proceedings in Mexico, where Banamex produced reams of documents without raising bank secrecy. Ex.2:¶¶23-28.

In any event, Mexican banking laws are at most neutral—the documents will be available or not regardless of where the litigation is conducted.

### (5) The plaintiffs' temporary legal difficulties are irrelevant.

Citi's cover-up destroyed the plaintiffs. Their assets, including documents, were seized and placed outside their control. Buildings that housed other documents were sealed because of a failure to pay taxes by the government receiver. Now, Citi claims these difficulties—which Citi created—are a reason to move this matter to Mexico, as if the difficulties will miraculously disappear if this matter is tried in Mexico. The trial forum does not affect Oceanografía's ability to access its own documents.

Since Citi's motion was filed, Oceanografía's documents are free of any control by any Mexican authority. Ex.1:¶¶9, 13.

## 2. The Amended Complaint adequately pleads claims against Citi.

### A. Citi's arguments are based on altered facts.

Citi's arguments pursuant to Rule 12(b)(6) are more in the nature of a summary judgment motion, made without evidence, than a motion to dismiss. In the context of the motion before this Court, the AC's allegations must be "accepted as true," and a claim for relief is viable if it is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. *The plaintiffs have a viable claim for malicious prosecution.*

The AC alleges all elements of a malicious prosecution claim.

<u>Commencing Proceedings</u>. Citi presented false claims against Yáñez and Oceanografía to hide the wrongdoing of its subsidiary, yet Citi claims this action should be dismissed because, in Citi's version of the facts, Citi merely "said they were cooperating with authorities and taking steps to recover the misappropriated funds and to hold people accountable, including their own employees and others." ECF:38:18. In other words, Citi denies the allegations against it.

As set out in the AC, Citi did far more than merely furnish information to the prosecutors. It commenced an all-out campaign to falsely lay the blame for its subsidiary's wrongs on Oceanografía and Yáñez. *E.g.*, ECF34:¶¶358-61. The same conduct also violates the Mexican law on malicious prosecution. The Mexican Federal Penal Code condemns "anyone who files denouncements or slanderous complaints, meaning those in which the author imputes a crime to a certain person, knowing that he is innocent or that he has not committed the alleged crime." Ex.3:¶23 (translated). The Civil Code creates a private right of action for such a violation. Ex.3:¶24.

Citi cannot avoid this case through the simple expedient of denying the core allegations.

<u>Favorable Termination</u>. Citi admits the criminal receivership has been dissolved. ECF38:5. The *civil* bankruptcy filed when that criminal seizure destroyed Oceanografía's business is irrelevant to whether the *criminal* proceeding terminated in Oceanografía's favor, and in any event, the civil bankruptcy is over. Ex.1:¶13.

Yáñez obtained a judicial determination that Citi's claims were insufficient to support criminal action against him. ECF34:¶372. That ruling is binding unless and until it has been reversed or new evidence emerges, which has not occurred. Ex.1:¶¶27-28. The biased and unsupported declaration from Citi's own lawyer cannot create a fact question, much less rebut the AC's allegations. ECF41. Notably, Banamex's lawyer has no support for his assertions; the attachments to the biased declaration

relate solely to the original charges, not the appellate opinion he claims to contest. *See* ECF41. The plaintiffs object to the declaration of Banamex's lawyer Mauricio Roberto Palazuelos Bard as biased and unsupported. ECF41.

     <u>Probable Cause</u>. There is no probable cause element to a claim for malicious prosecution under Mexican law. Ex.3:¶¶25-26.

     Even applying New York law, Citi cannot use the initial arrests and seizure that it induced with false claims as a defense to instituting a proceeding with false claims. Preliminary probable cause findings are irrelevant when they may have been procured by false claims—the very core of the allegations in this action. *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003); *See Russo v. State of N. Y.,* 672 F.2d 1014, 1018 (2d Cir. 1982), *modified on reh'g,* 721 F.2d 410 (2d Cir. 1983). If a probable cause finding "was secured through bad faith or perjury," the finding has no legal force. *See Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997) (False evidence "works an unacceptable 'corruption of the truth-seeking function of the trial process.'") (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Ultimately, whether there was probable cause is a question of fact. *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010).

     Further, of course, the Mexican appellate court held that there was an insufficient constitutional basis for the original charges against Yáñez. Ex.1:¶¶25-26.

### C. *Citi tortiously interfered with the plaintiff's contracts and business relationships in the United States and Mexico.*

     Citi tries to avoid tortious interference under US law[2] by again claiming it did nothing wrong, this time reiterating its fanciful reading of its statements—which included headings of "Oceanografía's fraud"—as not laying blame on the plaintiffs. ECF38:19. The AC, however, clearly alleges that Citi utilized wrongful means to interfere with the plaintiff's contracts and business relations, including that

---

[2] The plaintiffs concede that Mexico does not recognize this exact tort, which is why the AC does not raise the claim under Mexican law. ECF34:¶¶410-18.

Citi "knew that its allegations against Oceanografía and Yáñez were false" and nonetheless "instituted, and pressured for the continuation of, legal proceedings against Oceanografía and Amado Yáñez." ECF34:¶¶358, 361. Once again, Citi cannot avoid allegations by simply denying them.

The remainder of Citi's argument is to question whether the AC alleges all of the elements of a tortious interference claim, but the AC is clear. Citi had comprehensive knowledge of Oceanografía's business relations through Project Blue and its oversight of Banamex. ECF34:¶¶98, 121-22, 415. Citi used wrongful means to interfere with those contracts—including the four New York law contracts—by falsely claiming the plaintiffs committed fraud. *E.g.*, ECF34:¶359. Citi's false claims destroyed the value of Oceanografía's bonds (issued in the US and not in Mexico), ECF34:¶93, prevented the acquisition in the US of Cal Dive, ECF34:¶102, prevented Oceanografía's efforts to obtain US equity investors through Project Blue, ECF34:¶123, and prevented compliance with Oceanografía's Pemex contracts, ECF34:¶¶57, 380-82.

## D. *Citi committed fraud.*

While Mexican law does not recognize a claim for tortious interference, it does recognize a claim for fraud directed at third-parties, which ends up at the same place. Ex.3:¶¶27-30.

Citi's Mexican legal expert asserts the elements of a fraud claim under Mexican law are identical to those under New York law, ECF42:¶15, but the relevant Mexican Code provisions do not require that the plaintiff relied on the fraudulent statements. Ex.3:¶¶27-35. A fraud claim can be brought by any party proximately injured by the fraudulent statements. Ex.3:¶¶27-35. Thus, Mexican law parallels the general common law: "There is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656 (2008); *see also id.* ("The Restatement … provides only that the plaintiff's loss must be a foreseeable result of someone's reliance on the misrepresentation. It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury.").

In this context, Citi's pleading complaint pursuant to Rule 9(b) is overstated.

Rule 9(b)'s requirements are "relaxed under certain circumstances, including situations when (a) '[t]he pleader is asserting that third persons have been defrauded,' and (b) 'when facts are peculiarly within the opposing party's knowledge.'" *N.B. Garments (PVT.) Ltd. v. Kids Int'l Corp.*, 2004 WL 444555, at *2 (S.D.N.Y. 2004) (quoting, *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*, 473 F. Supp. 680, 693 (S.D.N.Y. 1979)). "Thus, so long as the allegations are sufficiently particularized to put the defendant on notice as to what the plaintiff charges its fraudulent conduct consisted of, the date, time and place need not be pled with absolute precision." *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 366 (E.D.N.Y. 2010). Judged in this way, the AC suffices. It lists all of Citi's public SEC filings, although not Citi's letters to the SEC, and many of the press reports of Citi's comments. Citi has more than enough information to frame its defense. If more is needed, then the plaintiffs seek leave to amend to add a hundred pages of detail no one will ever read.

The AC adequately pleads scienter. Citi objects that the AC names only five Citi officials involved in the fraud (Citi's CEO, Co-President, and CFO, and the CEO and General Counsel of Citi Latin America, ECF34:¶¶24, 276, 283-85, 334, 348), but "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (citation omitted). In any event, Banamex conceded in open court that it was blaming Yáñez under instruction of Citigroup's General Counsel for Latin American Affairs. Ex.1:¶21.

## E. *Oceanografía has standing.*

The AC states directly that the receiver for both the criminal seizure and the civil bankruptcy authorized the original suit. ECF34:¶377. There is no basis to reject that allegation. In an abundance of caution, the receiver's declaration confirming that authorization is attached as Ex.5; *see also*

Ex.1:¶¶15-18. Also, Oceanografía is now out of bankruptcy and can ratify this lawsuit. Ex.1:¶19.

### F.  *Citi is bound by the New York contracts.*

Once again, Citi bases its argument on simply ignoring clear allegations, this time arguing that the breach of contract "claim must be dismissed as to Citigroup because it is not alleged to have been a contract party." ECF:38:24. The contracts related to Project Blue and the acquisitions of Cal Dive and the Goliath expressly include all Citi affiliates, which includes Citigroup, and were drafted and executed by Citigroup Global Markets in behalf of those entities. ECF34:¶¶100, 108, 118.

If Citi is not governed by these contracts, the plaintiffs request leave of court to amend their complaint to add a breach of fiduciary duty claim, which duty is waived in the contracts.

### 3.  *Conditional Motion for Leave to Amend*

To the extent that the AC is deemed to be insufficient in any respect, the plaintiffs seek leave to amend pursuant to Rule 15.  Rule 15(a) states that leave to amend "shall be freely given when justice so requires," and the Supreme Court instructs that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 183 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." C. Wright & A. Miller, Federal Practice and Procedure § 1487 (2010). Furthermore, "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (citations omitted).

For these reasons, Citi's motion should be denied.

Dated: February 12, 2018

Respectfully submitted,

Maney & González-Félix PC


By: /s/ Mark Maney

Mark Maney
(admitted *pro hac vice*)
712 Main Street, Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

ATTORNEYS FOR OCEANOGRAFÍA, S.A. DE C.V.
AND AMADO YÁÑEZ