UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OCEANOGRAFÍA, S.A. DE C.V. and
AMADO YÁÑEZ OSUNA,

    *Plaintiffs*,

-against-

CITIGROUP, INC., CITIBANK, N.A.,
CITIGROUP GLOBAL MARKETS, INC.,
and BANCO NACIONAL DE MÉXICO, S.A.,

    *Defendants*.

NO. 17-CV-1434 (RJS)

JURY TRIAL DEMANDED

---

# REPLY IN SUPPORT OF OCEANOGRAFÍA'S AND YÁÑEZ'S RENEWED MOTION FOR LEAVE TO AMEND AND MOTION FOR RECONSIDERATION

Maney & González-Félix PC
Mark Maney
(admitted *pro hac vice*)
712 Main Street, Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

COUNSEL FOR OCEANOGRAFÍA, S.A. DE C.V.
AND AMADO YÁÑEZ

TABLE OF CONTENTS

Table of Authorities ……………………………………………………………………………iii

Preliminary Statement……………………………………..………………………………………..1

Background…………………………………..…………………………………………………….1

    1. Citi concedes this Court's dismissal was based on false facts …………………......……..1

    2. Citi did not act as Oceanografía's exclusive financial adviser as a volunteer ……..……..1

    3. Citi does not argue that it would be prejudiced by leave to amend………………..……..3

    4. The plaintiffs would be prejudiced by a denial of leave to amend...……..………………….3

Argument on Motion for Reconsideration…………………………………………………….3

    1. This Court cannot dismiss on the basis of false facts...………………………………...….3

        a. Factual inferences are to be drawn in the plaintiffs', not Citi's, favor.……..……..…..3

        b. There is no inconsistency between the AC's allegations and the contract extensions…………………………………………………………………………....4

        c. The plaintiffs were not required to plead with the specificity urged by Citi....……......4

        d. The good faith issues were not extensively briefed…………….…………………...5

    2. This Court's opinion is based on the false claim that the New York contracts were terminated…………………………………………………………………………..6

Leave to Amend……………………………………………………………………………….7

    1. Citi would not be prejudiced by a granting of leave…....……………….…..……………...7

    2. Citi waived its arguments against leave to amend……………………………………...7

    3. Citi has not shown bad faith as the proposed amendment does not contradict prior allegations………………………………………………………………….7

    4. Citi has not shown futility………………………………………………….…….8

    5. The plaintiffs did not have a chance to amend in relation to Citi's contract arguments…….8

    6. No judgment has been entered in this matter……………………………………….9

## TABLE OF AUTHORITIES

Cases

*Arista Records, LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2011) ……………………………………..4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ………………………….9

*Brown v. Cerberus Capital Mgt., LP*, 703 Fed. Appx. 11 (2d Cir. 2017) …………………………8

*Cellular Tech. Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223 (D. Conn. 2009………..……………..9

*City of New York v. Group Health Inc.*, 649 F.3d 151 (2d Cir. 2011)….……………………………7

*Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 Fed. Appx. 535 (2d Cir. 2009) …….……………………………………………………..8

*Foman v. Davis*, 371 U.S. 178 (1962)……………………………………………………….....1

*Friedman v. Endo Int'l PLC*, 2018 WL 2021561 (S.D.N.Y. Apr. 27, 2018)...…………………………10

*I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.*, No. 04-cv-9251 (RMB), 2005 WL 2414762 (S.D.N.Y. Sept. 28, 2005)……………………………………………………………….…..6

*National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240 (2d Cir. 1991)…....…..……………..10

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990)……………….…………………………..7, 9

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008…………………………………………10

*State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir. 1981)……………………………….7

Treatises

Restatement (Second) of Contracts…………………………………………………...5

PRELIMINARY STATEMENT

Critically, Citi does not contest that it misled this Court when it declared (in its reply) that three of the New York contracts had terminated before Citi's false cover-up.

Nor does Citi attempt to assert prejudice if leave to amend is granted.

Instead, Citi asks this Court to deny the plaintiffs the chance to correct this critical factual error based on alleged technical defects in the plaintiffs' pleadings. According to Citi, the plaintiffs are trying "to create an entirely new set of facts" by clarifying that the New York contracts were in effect at the time the Amended Complaint (AC) alleges they were breached. ECF80:2. The gambit fails, however, because, as stated by the Supreme Court: "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules … accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962).

This Court's order—based on false facts—is supportable only if that admonition is ignored.

BACKGROUND

1. *Citi concedes this Court's dismissal was based on false facts.*

The most glaring aspect of Citi's opposition is that Citi never denies that the New York contracts were effective when Citi began its cover-up. Citi makes a number of insupportable arguments why Oceanografía should be denied the opportunity to correct this Court's factual error, but Citi effectively concedes that the sentence from Citi's reply that based this Court's dismissal— "Finally, three of the agreements terminated long before Citigroup's alleged 'cover up'" (ECF68:10 (citations omitted)—was false.

2. *Citi did not act as Oceanografía's exclusive financial adviser as a volunteer.*

Trying to tie this action to Mexico, Citi continues to downplay its role and overemphasize Banamex's, but Citi was managing far more extensive and important business for Oceanografía than

Banamex. While Banamex was advancing (pursuant to Citi's program and direct oversight) about $585 million to Oceanografía, Citi was managing the Project Blue transactions (including Cal Dive and the *Goliath*) and the bond issuance, which were valued *by Citi* at about $1 billion dollars. ECF34:¶¶10, 49. Thus, as explained extensively in the motion for reconsideration and in the AC, this action is not based on Banamex's bank fraud, but Citi's false claims, which directly prevented achievement of the goals of the New York contracts.

In this context, the New York contracts cannot be ignored unless, as the Court incorrectly found, they terminated before Citi's cover-up. Rather than addressing the implications of the Court's factual error, however, Citi wants to try this case on a narrow reading of the AC. For example, Citi claims its own Project Blue presentation is irrelevant because it "at most only refers to the acquisition of Cal Dive merely as a 'Potential Future Project' and makes no reference to the 2012 Cal Dive Agreement or its extension." ECF80:6-7. Note: Citi does not deny the contract was extended; Citi merely claims the referenced presentation does not *prove* the extension, but Citi did not file a summary judgment motion. Citi filed a motion to dismiss.

In any event, Citi's reading of the AC makes little sense. Citi asks this Court to find that Citi managed Project Blue—an effort to obtain hundreds of millions of dollars in financing for projects that included both the Cal Dive and the *Goliath* acquisitions—with no prospect of being paid for its efforts because the contracts that set out Citi's multi-million-dollar fees had expired with no extensions. In other words, Citi would have this Court infer from the AC that Citi was managing a billion dollars in Oceanografía projects as a volunteer and that Citi had let lapse the contracts that set out Citi's responsibilities, limited Citi's liabilities, and guaranteed Citi's substantial fees.

Not surprisingly, as a matter of fact, the four New York contracts that governed Citi's efforts related to Project Blue, Cal Dive, the *Goliath* and the bond indenture were still in effect when Citi began its cover-up. Citi should not be allowed to avoid those facts.

### 3. *Citi does not argue that it would be prejudiced by leave to amend.*

Citi did not oppose the plaintiffs' first request for leave to amend in their opposition to Citi's motion to dismiss. Given another chance, Citi again fails to proffer any proof or argument that Citi would be prejudiced if the plaintiffs were granted leave. The only reference to prejudice in Citi's opposition is when Citi ducks providing any substance to its claim that any amendment "would be futile" by asserting that an explanation would somehow be "premature and prejudicial." ECF80:11.

Citi, of course, avoids this issue because it is clear there is no prejudice or undue delay. No discovery has been conducted, and no scheduling order has been entered.

### 4. *The plaintiffs would be prejudiced by a denial of leave to amend.*

Citi's opposition also ignores the prejudice to the plaintiffs if leave is denied. Citi wants this Court to reaffirm dismissal of this action on the basis of demonstrably false facts because the plaintiffs failed to predict that this Court would be misled by a one-sentence aside at the end of Citi's reply. Nor does Citi deny the clear difficulties the plaintiffs experienced in gathering the information necessary to draft the AC, difficulties engendered in large part by Citi's actions. *See* ECF23, 27, 29.

## ARGUMENT ON MOTION FOR RECONSIDERATION

### 1. *This Court cannot dismiss on the basis of false facts.*

#### a. *Factual inferences are to be drawn in the plaintiffs', not Citi's, favor.*

Without denying that Citi got it wrong, Citi asks this Court to forge ahead based on known false facts because the "Plaintiffs do not point to any allegation in their amended complaint that the agreements were extended. Instead, Plaintiffs ask the Court to infer that these agreements were still in effect." ECF80:6 (citation omitted).

Frankly, yes: The plaintiffs do ask this Court to infer the agreements were in effect *or, in the alternative, to allow an amendment to make a needed clarification*. As stated by the Court, "In reviewing a Rule

12(b)(6) motion, a court must accept as true all factual allegations in the complaint and *draw all reasonable inferences in favor of the plaintiff*"—that is, in Oceanografía's favor, not Citi's. ECF76:5 (citation omitted; emphasis added).

    *b. There is no inconsistency between the AC's allegations and the contract extensions.*

The AC alleges that Citi breached the New York contracts. It is certainly reasonable to infer that the contracts were in existence when they were breached, particularly since, as the Court notes, terminated contracts cannot be breached. Also, it is important to note that the AC did not attach the contracts containing the terminate-by/unless-extended language, so there was no need to allege expressly that the contracts had extended. Thus, nothing in the AC's allegations implies that the contracts were terminated; certainly, there is nothing that would allow such an inference to be made as a matter of law.

Again: Not only is an inference that the contracts terminated contrary to the rules, it is contrary to the facts. The four contracts were extended because the transactions had not been completed. It is not reasonable to infer that Citi continued to manage the billion-dollar projects without the protections of a contract. The bond indenture, of course, expressly states that Citi's role as trustee continued until after the start of the cover-up. ECF34:¶85.

    *c. The plaintiffs were not required to plead with the specificity urged by Citi.*

This Court's opinion cannot be predicated on the fact that plaintiffs failed to allege a contract extension. The rules of civil procedure simply do not require that level of specificity. *See Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119–20 (2d Cir. 2011) (No requirement to "allege specific facts" or "include specific evidence.").

Citi's narrow reading is not limited to contract extensions. Citi would have this Court interpret the AC against the plaintiffs at every turn. For example, Citi claims it is "absurd" to contend that the AC could "support an inference of bad faith on the part of" Citibank in relation to the bond indenture.

ECF80:8. The AC alleges that Citi (as trustee) knowingly issued false statements that Oceanografía had committed bank fraud—a breach of the indenture—and that Citi's knowingly false statements caused Oceanografía to be seized by the Mexican government—another breach of the indenture. ECF34:¶44; ECF78:ex.3 at §§ 4.05, 6.02. Finally, the AC alleges that Oceanografía's bondholders invoked their rights as bondholders under the indenture based on Citi's false claims. ECF34:¶94. On the other hand, Citi does not explain how it is "absurd" to infer that a bond trustee acted in bad faith when it knowingly made false claims about the bond issuer, causing the bondholders to call their bonds and put the issuer into bankruptcy. *See* Restatement (Second) of Contracts § 205, comment e ("The obligation is violated *by dishonest conduct such as conjuring up a pretended dispute*, asserting an interpretation contrary to one's own understanding, *or falsification of facts*.") (emphasis added).

   d. *The good faith issues were not extensively briefed.*

Citi also tries to avoid the implications of the factual error by claiming that the good faith covenant "was briefed extensively by the parties," and therefore this Court should refuse to readdress it. ECF80:5 (citing ECF76:6; ECF38:2, 8, 24-25; ECF55:6, 25; ECF68:10).[1]

This claim goes well beyond exaggeration. Citi's motion to dismiss depended on a tactic of ignoring the New York contracts as irrelevant based on Citi's misleading version of this action as relating solely to Banamex's fraud in Mexico. Citi's contract argument therefore consisted entirely of a bald claim that the New York "contracts have nothing to do with the cash advance program…." ECF38:24. Citi's cursory contract section cited to a total of seven opinions. Of those, four related to whether Citigroup can be held liable under contracts it did not sign, a side issue as the contracts expressly include Citi affiliates. The remaining three opinions simply set out the general rules

---

[1] Citi also misstates the briefing when it claims that the parties had "already briefed" whether the bond indenture prevented Citi from falsely claiming that Oceanografía had committed acts that breached the indenture. ECF80:11. None of the referenced briefing mentions the bond indenture.

governing the good faith covenant, which Citi used to support its claim that the New York contracts could not be breached by Banamex's fraud—a claim the plaintiffs have never made.

While there was extensive discussion on whether this action relates solely to Mexico (*see, e.g.*, ECF34:¶¶1-3), Citi's motion to dismiss contained no analysis on the duties set out in the New York contracts—the issue addressed in the motion for reconsideration.

2. *This Court's opinion is based on the false claim that the New York contracts were terminated.*

This Court does not need the parties to interpret its order for it, but it is unquestionable that this Court's opinion is premised in large part on the false conclusion that the four contracts had terminated. *Cf.* ECF80:5-6 (Citi claiming that the false facts are immaterial). This Court's opinion explains that the Court turned to the contract claims first because, "if viable," the claims "would support retaining this action in this Court." ECF76:5. The sole authority cited to support the Court's ultimate conclusion that the contract claims are not viable is *I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.*, which was based entirely on the fact that "there can be no covenant of good faith and fair dealing implied *when there is no contract*." 2005 WL 2414762 (S.D.N.Y. Sept. 28, 2005)) (emphasis added).

Falsely claiming the New York contracts terminated was the only way for Citi to maintain that its cover-up had no direct effect on Citi's ongoing roles as trustee and exclusive financial adviser. If the contracts were in existence at the time of Citi's cover-up, Citi cannot persuasively make the core argument in its motion to dismiss that this action relates entirely to Banamex's fraud in Mexico. As explained above, Citi was conducting more business for Oceanografía than Banamex. Unable to support its argument on this critical point, Citi demurs, claiming without support that it is "premature and prejudicial" for Citi to explain its legal argument. ECF80:11.

Thus, the plaintiffs do not contest the general rules governing the good faith covenant—they embrace them. As stated by the Court, "The boundaries set by the duty of good faith and fair dealing are generally defined by *the parties' intent and reasonable expectations in entering the contract*." ECF76:6

(citation omitted; emphasis added). Therefore, the good faith covenant "is a promise that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" ECF76:6 (citations omitted).

Clearly, Citi's knowingly false claim that Oceanografía committed bank fraud directly (as opposed to incidentally) interfered with Citi's contractual duties (1) as exclusive financial adviser to seek further credit for Oceanografía and (2) as bond trustee to act in the best interests of the bondholders (Oceanografía's creditors) and Oceanografía.

## LEAVE TO AMEND

1. *Citi would not be prejudiced by a granting of leave.*

In this Circuit, leave to amend is to be granted absent "prejudice or bad faith." *City of New York v. Group Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011); *see also State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Yet, after two chances, Citi has still not proffered any evidence or explanation of prejudice. Therefore, per this Circuit's well-established rule, leave should be granted.

2. *Citi waived its arguments against leave to amend.*

Ironically, while Citi falsely claims that the plaintiffs had prior opportunities to address Citi's factual misstatements, Citi ignores the fact that it failed to object to the plaintiffs' request for leave when it was first presented. If any arguments have been waived, they are Citi's.

3. *Citi has not shown bad faith as the proposed amendment does not contradict prior allegations.*

Citi charges the plaintiffs with "gamesmanship and bad faith" because the plaintiffs seek leave to correct the Court's factual errors. The reason leave is almost universally granted when a motion to dismiss is granted, however, is precisely to allow such clarifications, so that matters are decided on their merits, not procedural games. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).

According to Citi's irrelevant authority, leave can be denied on the basis of bad faith or gamesmanship when a plaintiff seeks to *contradict* its earlier allegations or to *shift* its theory of recovery

to avoid dismissal, neither of which has happened here. For example, Citi cites *Colliton v. Cravath, Swaine & Moore LLP*, an opinion where the district court rejected a proposed amendment that "*contradicts his verified original complaint.*" 2008 WL 4386764, at *13 (S.D.N.Y. Sept. 24, 2008) (emphasis added), *aff'd*, 356 Fed. Appx. 535 (2d Cir. 2009). Citi quotes another court stating that "the court need not accept as true allegations that *conflict with a plaintiff's prior allegations.*" ECF80:14 (citation omitted; emphasis added)). Another Citi opinion denies leave because, "having been apprised of Defendants' views of the original complaint's shortcomings, [the plaintiffs] have continued only to *shift theories of recovery*…." *Brown v. Cerberus Capital Mgt., LP*, 703 Fed. Appx. 11, 15 (2d Cir. 2017) (emphasis added).

The plaintiffs do not raise contradictory facts or theories. The factual clarifications in the draft amended complaint comport entirely with the theories of recovery and facts set out in the AC. The AC alleges that Citi breached the New York contracts. It is entirely consistent to allege that the contracts were in existence at the time they were breached. Indeed, it is a stretch to argue that a plaintiff would be required to expressly allege the contracts were in existence in the context of a breach of contract claim. Nor is it a shift from the AC's original claims for breach of the duty of good faith and fair dealing in the New York contracts to explain how Citi's false statements directly deprived Oceanografía of the fruits of those contracts.

4. *Citi has not shown futility.*

While futility is an exception to the general rule, Citi declines to explain why amendment would be futile. ECF80:11. As set out above, the argument is a red herring in any event, as Citi's knowingly false statements clearly struck at the heart of its duties as trustee and as exclusive financial adviser.

5. *The plaintiffs did not have a chance to amend in relation to Citi's contract arguments.*

The AC was drafted without any insight into Citi's cursory contract arguments, yet Citi contends repeatedly that "Plaintiffs were given the opportunity to amend their complaint after seeing Defendants' arguments as to why the original complaint was deficient" and in support cites to a pre-

motion letter to the Court and this Court's comments at the only hearing in this matter—both before the AC was filed. ECF80:12 (citations omitted); *see also* ECF80:11n.11.

Citi's claim is simply untrue. Neither Citi's pre-motion letter to the Court nor the hearing addressed the plaintiffs' contract claims because *the original complaint did not raise contract claims*. ECF1; ECF20 (pre-motion letter); ECF25 (hearing transcript). In another part of its opposition, Citi, in fact, concedes that the first time it raised the issue of contract termination was in its reply. ECF80:10 ("as Defendants argued in their reply brief").

This action, therefore, parallels the Second Circuit's opinion in *Ronzani v. Sanofi S.A.*, where the court found an abuse of discretion in denying leave even though the plaintiff had amended his complaint once before a responsive pleading was served. 899 F.2d at 197-99. On the other hand, this action is nothing like Citi's authority, which upholds denying leave to plaintiffs after multiple opportunities to amend in response to specific legal arguments. For example, in *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, the plaintiff was allowed to file multiple amended complaints, including three before one dismissal, and then another after an order of dismissal. 493 F.3d 87, 108 (2d Cir. 2007) (cited at ECF80:11). In Citi's other opinion on this issue, the court had "already given Plaintiffs a chance to replead in response to Defendants' original motion to dismiss" and therefore saw "no reason to provide yet a third chance" to replead. *Cellular Tech. Servs. Co. v. TruePosition, Inc.*, 609 F. Supp. 2d 223, 246–47 (D. Conn. 2009) (cited at ECF80:12).

6. *No judgment has been entered in this matter.*

Trying to remove this action from the black letter rule that leave should be granted, Citi claims a different standard applies "[n]ow that the Court has dismissed the amended complaint." ECF80:12-13. According to Citi, now that the Court has ruled (whether on false facts or not), "interests in finality also weigh against granting leave to amend." ECF80:12.

Citi, however, supports the supremacy of finality over accuracy with authority addressing motions for leave filed after final judgment is entered, but no judgment has been entered in this matter. In fact, the plaintiffs first requested leave in direct response to Citi's cursory contract arguments, before any order on Citi's motion to dismiss. ECF55:25. That motion was unopposed. *See* ECF68. Even as to this renewed motion, this Court has yet to order a dismissal of this action (without prejudice) because Citi has not accepted the Court's prerequisites for such an order. ECF76:16. Citi's argument and authority are therefore irrelevant. Citi's own authority explains that post-judgment motions for leave are judged under a different standard because (as Citi quotes) "[a] party seeking to file an amended complaint postjudgment *must first have the judgment vacated or set aside*." ECF80:12 (emphasis added; quoting, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). The need to set aside the judgment justifies the more exacting standard. *Ruotolo*, 514 F.3d at 191; *see also National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991).

The issue is ultimately irrelevant because leave to amend in this case is warranted under even the post-judgment standard. Citi's own authority notes that, even "[i]n the post-judgment context, therefore, leave to amend should be granted unless there is 'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Friedman v. Endo Int'l PLC*, 2018 WL 2021561, at *1 (S.D.N.Y. Apr. 27, 2018) (cited at ECF80:13). The court ultimately denied leave on the basis that the proposed amendments were futile, not because of any interest in finality. *Id.* at *2. Similarly, the *Ruotolo* court noted that it was appropriate to deny leave because, "Over the next three years of active litigation, Ruotolo was twice given leave to amend his complaint …." 514 F.3d at 187.

This Court should withdraw its order of dismissal and grant leave to amend.

Dated: November 2, 2018

                Respectfully submitted,

                Maney & González-Félix PC

                By: <u>/s/ Mark Maney</u>

                Mark Maney
                (admitted *pro hac vice*)
                712 Main Street, Suite 2100
                Houston, Texas 77002
                Telephone: 713.806.2500
                mmaney@maneylaw.com

                ATTORNEYS FOR OCEANOGRAFÍA, S.A. DE C.V.
                AND AMADO YÁÑEZ